## J. W. BAILEY v. THE KANSAS MANUFACTURING COMPANY.

1. INSTRUMENTS, *not a Single Transaction.* Where an insolvent person executed two chattel mortgages in good faith for a valuable consideration for the benefit of certain creditors, and such mortgages were duly filed, and thereafter and upon the next day a deed of voluntary assignment for the benefit of all his creditors was executed by him, the execution of such instruments does not constitute a single transaction, nor do such chattel mortgages and the assignment defeat each other, as each is valid.

2. HUSBAND AND WIFE, *as Debtor and Creditor; .Chattel Mortgage.* If the wife give her money or other property to her husband to assist him in his business, he will not be permitted, as against his creditors, to give it back to her when insolvent, to save something for his wife and family. If, however, the wife loan her husband money, although no time be fixed for its repayment and although no express promise to repay is made, yet if the circumstances attending the receipt of the money by the husband are such as to prove that they dealt with each other as debtor and creditor, the husband may pay the indebtedness, or secure the indebtedness by a chattel mortgage upon his property, and such payment, or such chattel mortgage, will be no fraud upon his creditors.

### Error from Atchison District Court.

JANUARY 27, 1882, *The Kansas Manufacturing Company* brought its action against *A. Macdonald,* on seven promissory notes not then due, and procured an order of attachment,

which was levied on a stock of hardware. The stock of hardware was mortgaged by A. Macdonald, and the mortgage was assigned to *J. W. Bailey*. On July 7, 1882, J. W. Bailey filed his motion to be allowed to interplead. The court sustained the motion, and on August 5, 1882, the interplea was filed, setting up a note executed by A. Macdonald to his wife, Maria Macdonald, for $1,500, dated April 28, 1879, and also a chattel mortgage, executed January 19, 1882, by A. Macdonald to his wife, to secure said note—which chattel mortgage was filed for record on the same day, at five o'clock P. M. The interplea also set out the attachment proceedings against A. Macdonald, and alleged that the latter was indebted to the Weir Plow Company, and that on February 16, 1882, Maria Macdonald, to secure such indebtedness, as far as the same would go, assigned the note and mortgage to J. W. Bailey, who was the agent of the Weir Plow Company, and who took the note and mortgage to secure its claim.

The prayer of the interplea was for judgment against A. Macdonald for $1,500, with interest, and that the chattel mortgage should be declared a first lien upon the property therein described. On August 10, 1882, the Kansas Manufacturing Company filed its answer to the interplea of J. W. Bailey, and thereafter J. W. Bailey filed a general reply to this answer.

The action was tried at the June Term of the court for 1883, by the court, a jury being waived. Upon the evidence, the court found the following conclusions of fact:

"1. For fifteen years or more, last past, the defendant and Maria Macdonald have been husband and wife, residing at Atchison, Kansas, with their children, and during said time, up to the spring of 1879, the defendant was a clerk in the hardware business. About fourteen years ago, said Maria Macdald received about $1,000, as her share of her father's estate, and part of the same was invested in lots in Atchison for a homestead, and the title thereto placed in her name. The homestead was improved in part with said money, and in part by means derived from defendant's earnings. No account was ever kept of the money furnished by either, the making of the improvements and the keeping of the family being contributed

to from the funds of either, which were used in common — the defendant's earnings being little, if any, more than sufficient to support his family while he was a clerk. Some years later she received about $1,000 from a brother, and an eighty-acre tract of land, in this county, was bought for $600. Some lots in Atchison were also bought in her name, for $300. In 1879, or in 1880, she also received between $500 and $1,000 from her brother-in-law. No account was ever kept up to 1882, between the defendant and his wife, as to the sum or sums furnished by either for any purpose, but all the investments in real estate, except one lot, were made in her name.

"2. About March, 1879, said homestead was sold, and the defendant, with the consent of his wife, took $1,500 of the proceeds and embarked in the hardware business on his own account. . This was all the capital that he then had, but between that time and January, 1882, he received $1,480 more, being of the proceeds of the sale of said eighty-acre tract, and said lot in Atchison, that stood in his wife's name, all of which real estate was sold at a large profit, more than double its purchase price. . This aggregate of $1,480 was received in payment at different times, each of which was entered upon the cash-book of the business as received from him, and placed to his credit upon the ledger of the business. His wife knew that said money derived from the sale of said homestead and other real estate constituted his only capital, and that he was using the same in his own name without any credit to her whatever; and the defendant made no express promise to pay said money back to his wife, except as hereinafter stated.

"3. In 1881, another lot in Atchison was purchased in her name, with a view of building a residence thereon for a home. Only $50 was paid on the lot, but a contract was entered into with Cole and Shafer by which they agreed to build a house on said lot for $825, and to take in payment hardware out of the defendant's store. They proceeded with said building, and up to January, 1882, they had obtained hardware from the defendant's store amounting to $639.80, but said building was not completed. Cole and Shafer were debited with the amount of said hardware.

"4. In the fall of 1881, the defendant became embarrassed. He had purchased a large stock, and was indebted therefor about $10,000. He went east and to neighboring cities where he was indebted. He was then insolvent, but he mis-

represented his financial condition to his creditors, and procured from most of them an extension of time.

"5. Early in January, 1882, the defendant contemplated a failure in business, and he and his book-keeper set about to save something for the defendant's wife and family. A journal and a ledger account was opened with Maria Macdonald, January 6, 1882, and the several sums, aggregating $1,480, appearing in the cash-book as received from A. Macdonald and journalized and posted to his credit, were also journalized and posted to the credit of Maria Macdonald, the journal and entries both stating the dates as in the original entries in the cash-book, which were not altered, and the journal entry having an explanatory note to the effect that the original credits were erroneously made. The amount of Cole and Shafer's account was also debited to said Maria Macdonald. At the same time, the said promissory note, (nonnegotiable in form,) for $1,500, a copy of which is set forth in the interplea of J. W. Bailey, was drawn up and signed by the defendant, and dated back to about the time that the defendant engaged in business, and his wife made the indorsement thereon as follows: 'This note is renewed for two years more, but with interest.—(Signed) MARIA MACDONALD.' Said note was intended to cover the amount of money derived from the sale of said homestead and put into the business at the beginning, in 1879.

"6. On January 17, or 18, 1882, said Maria Macdonald went to A. F. Martin, an attorney at law at Atchison, and handed him said promissory note and told him she wanted it secured by a chattel mortgage on the stock of goods of the defendant. At said time A. F. Martin had in his hands for collection a claim of the Gibbs & Sterrett Manufacturing Company against said A. Macdonald, for $116.60. Said A. F. Martin, on or about January 17, or 18, 1882, conferred with said A. Macdonald, who talked about making a general assignment for the benefit of his creditors. He however agreed to execute chattel mortgages securing said claims, and on January 18, 1882, said A. F. Martin drew up the chattel mortgage of that date to Maria Macdonald, a copy of which (except the schedule) is annexed to the interplea of J. W. Bailey herein. A full schedule of the stock was annexed to the original mortgage. Said mortgage was not signed and executed by the defendant until the afternoon of January 19, 1882. At the same time, January 19, 1882, the defendant executed another mortgage

of that date to said Gibbs & Sterrett Manufacturing Company upon said stock of goods, to secure its claim. Said mortgage had no schedule thereto, but referred to the schedule attached to said mortgage to Maria Macdonald. Both mortgages were handed to said A. F. Martin, and he took them to the office of the register of deeds of this county and had the same filed in said office at 5 o'clock P. M. of said day. The schedule described by items the entire stock of goods and everything connected with the business, showing a total valuation of $12,-357.81; and the defendant had no other tangible property except household goods · and a few other articles exempt from legal process. · But the notes, book accounts and other choses in action were not included in said schedule.

"7. Before the final execution and delivery of said mortgages by the defendant to the said A. F. Martin for said Maria Macdonald and the Gibbs & Sterrett Manufacturing Company respectively, it had been fully agreed between the defendant and said A. F. Martin that said defendant should make a general assignment of all his property to said A. F. Martin, as assignee, for the benefit of all of the defendant's creditors; and early the next morning, January 20, 1882, the defendant executed such deed of assignment to said A. F. Martin, conveying to said A. F. Martin all of defendant's property, real. and personal, including notes, book accounts and choses in action, and said stock of goods in trust for the equal benefit of all the defendant's creditors. Said A. F. Martin filed said deed of assignment in the office of the register of deeds for record at 9 o'clock A. M. on said 20th day of January, 1882, and he immediately got the key of said store from the defendant and took possession of said stock of goods as such assignee. In fact, the defendant closed the store on the evening of January 19, 1882, with a view to said assignment, and did not open it again next morning, but turned the key over to his assignee.

"8. About ten days or two weeks after the assignment, said Maria Macdonald indorsed said promissory note in blank and handed it to said A. F. Martin, so that it might be used in any way that was deemed for the best interest of the defendant and said Maria Macdonald.

"9. The defendant was indebted to the Weir Plow Company in the sum of about $1,800, which was past due, on February 16, 1882. J. W. Bailey, who is and was the general agent of said company, entered into negotiations with the defendant and his wife and said A. F. Martin for the transfer of said note to him. Neither he nor the other parties then

knew the amount of said indebtedness, and it was finally agreed that said note should be assigned to said J. W. Bailey, to secure said indebtedness to the Weir Plow Company, and that if the proceeds of the note were more than sufficient to pay the indebtedness to the company, then the balance was to be paid to said Maria Macdonald. Thereupon, said A. Macdonald, with the consent of said Maria Macdonald, wrote over her signature upon the back of said note the words, "Pay to the order of J. W. Bailey," and said note was then handed to said J. W. Bailey, and he handed it to Mills & Wells, his attorneys, for collection, and also immediately employed said A. F. Martin as attorney to assist therein. At the time of said assignment to J. W. Bailey, it was also agreed that as soon as Maria Macdonald got able to go to the register of deeds' office, she would assign the chattel mortgage.

"10. On January 27, 1882, the attachment in this action was levied upon said stock of goods, and the sheriff took the same out of the possession of the said A. F. Martin, assignee. Afterward a receiver was appointed by this court to take charge of said stock of goods, and on February 23, 1882, an order was made by this court for the sale of said stock by the receiver, and on March 25, 1882, he sold said stock of goods in pursuance of said order, for the sum of $3,870, of which sum there still remains in his hands fully $1,700.

"11. On July 24, 1882, said Maria Macdonald executed the assignment of said chattel mortgage to said J. W. Bailey, a copy of which is indorsed upon the copy of said chattel mortgage attached to the interplea of said J. W. Bailey, she then going to the office of the register of deeds for that purpose.

"12. No consideration ever passed from J. W. Bailey to said Maria Macdonald for the assignment of said note, nor for the assignment of said chattel mortgage; the only consideration therefor being that the proceeds of the same should be applied to the payment of the indebtedness of the defendant to the Weir Plow Company, and the promise of said J. W. Bailey that if the proceeds were more than enough to pay said indebtedness, then the residue should be paid back to said Maria Macdonald."

And thereon the court made the following conclusions of law:

"1. Under the circumstances, said chattel mortgage and said assignment for the benefit of creditors should be con-

strued together as one transaction, and in so doing, the chattel mortgage and the assignment defeat each other as being against the policy of the law.

"2. Under the facts stated, said J. W. Bailey never obtained an equitable lien upon the funds in the hands of the receiver, and he is not entitled to any relief in this action.

"3. The plaintiff is entitled to judgment against said J. W. Bailey for all costs made upon the interplea and the trial thereof in this case."

Judgment was rendered in favor of *The Kansas Manufacturing Company* against *J. W. Bailey* for all costs. He excepted, and brings the case here.

*Mills & Wells*, and *Webb & Martin*, for plaintiff in error.

*Smith & Solomon*, and *Everest & Waggener*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: If the chattel mortgages therein referred to were executed in good faith, and for a valid consideration, the first conclusion of the trial court cannot be upheld. The several instruments executed by A. Macdonald were not intended to constitute a general assignment for the benefit of creditors, and the findings of fact do not support such a conclusion. It is well settled that an insolvent, as long as he retains a *jus disponendi* of his property, may appropriate it to the payment of his debts, and may prefer creditors. He may use all his property this way, or he may so use a part, and make a general assignment of the remainder. (*Lampson v. Arnold*, 19 Iowa, 479; *Dodd v. Hills*, 21 Kas. 707; *Randall v. Shaw*, 28 id. 419.)

It was held in *Dodd v. Hills*, supra:

"The fact that, pending a contemplated assignment for the benefit of creditors, a mortgage was executed in good faith by the debtor to one of his creditors to secure a preëxisting debt, which mortgage had long previously been promised by the debtor to such creditor, does not show that the deed of assignment, subsequently executed, was executed with the intention of hindering, delaying and defrauding creditors; nor does it render such deed of assignment void."

At the time of the execution of the mortgages to Maria Macdonald and to the Gibbs & Sterrett Manufacturing Company, A. Macdonald had the possession of the goods in controversy, and the right to dispose of the same. There is nothing in the assignment act that prohibits the execution of chattel mortgages, or that prohibits the transfer, by pledge or otherwise, of any kind of property to a creditor to secure the payment of a debt due to such creditor; nor is the execution of chattel mortgages, or the transfer of property to secure a creditor, against the spirit or intention of the statute regulating voluntary assignments. (*Tootle, Hosea & Co. v. Coldwell,* 30 Kas. 125.)

The case of *Van Patten v. Burr,* 52 Iowa, 518, to which we are referred, is not fully applicable. In that case the chattel mortgages were executed on the same day with the deed of general assignment, and the petition alleged "that the several instruments were intended to constitute a general assignment for the benefit of creditors." The decision was rendered upon the demurrer to the petition, and of course all the averments therein were admitted by the demurrer to be true. In this case the chattel mortgage to Maria Macdonald was drawn up on January 18, 1882. This mortgage, and the one to the Gibbs & Sterrett Manufacturing Company, were executed on the afternoon of January 19, 1882. They were filed in the office of the register of deeds on the same day. The deed of assignment was executed on January 20, 1882, and filed for record at 9 A. M. of that day. It is true that the defendant had agreed to make a general assignment at the time of the execution of the chattel mortgages, and in fact closed his store on the evening of January 19th with the view to an assignment; yet these facts do not establish that the chattel mortgages and the general assignment were intended to constitute a "single transaction." Indeed, the findings of fact show they were intended to constitute different and separate transactions. The mortgages were made to different parties; were executed and filed prior to the execution of the assignment. Further than this, however, there are many things stated in the opin-

ion of *Van Patten v. Burr*, supra, that are not wholly satisfactory. It is difficult to say upon what principle or for what reason a chattel mortgage, executed in good faith for the benefit of certain creditors upon the same day that the deed of general assignment is executed, must be considered a "single transaction."

The findings of fact cast a suspicion upon the *bona fides* of the note executed January 6, 1882, by Macdonald to his wife, and the chattel mortgage securing such note; but there is no finding that the money embraced in the note was intended by the wife as a gift to her husband, or that the note and mortgage were fraudulently executed without consideration; therefore, as the case now comes to us, we cannot affirm the judgment upon the findings of fact. If the chattel mortgage executed by Macdonald to his wife was given in good faith, and upon a sufficient consideration, in our opinion it is valid, and Bailey is entitled to have the amount secured by the chattel mortgage, paid from the proceeds of the sale of the goods. This conclusion renders it necessary for us to reverse the judgment, and direct a new trial.

There is a finding that Macdonald made no express promise to pay the money he received from his wife back to her, excepting after his insolvency. An express promise, however, to repay, is not necessary to be established in order to make the note a valid one. If the note is evidence of a valid and existing debt, then the chattel mortgage secured by it is also valid and binding. At common law, marriage was a gift to the husband of the wife's chattels in possession, and of her power over choses in action. If the husband exercised the power conferred, and reduced the choses into possession during coverture, they became absolutely his property, unless he accompanied the reduction into possession with declarations importing his intention to stand as trustee for his wife. The laws of this state recognize the separate property of married women, and protect that property from the husband's creditors. Of course a wife may give her money or other property to her husband, and he will not be permitted to give it back,

6 — 32 KAS.

when insolvent, "to save something for his wife and family," if the creditors have any claims against him.

While, however, an express promise to repay is not necessary, the circumstances attending the money received by the husband from the wife must prove that they dealt with each other as debtor and creditor. (*Steadman v. Wilbur,* 7 R. I. 481.) If the money received by Macdonald from his wife was loaned to him, it thereby created a valid indebtedness in her favor, and she had the right to accept the note and the chattel mortgage. (*Monroe v. May,* 9 Kas. 466.) On the other hand, the wife cannot be allowed, as against the creditors of her husband, to convert the receipt of the money by him into a debt, if the receipt at the time was intended as a gift to assist him in his business. (Bump on Fraudulent Conveyances, 304.)

If the trial court had made its findings upon the matters referred to, we could have have disposed of the case here; but in the absence of a finding whether the money received by the husband was given as a loan or as a gift to assist him in his business, we cannot say that all the facts were found by the trial court. As that court considered the chattel mortgages and the assignment one instrument, it did not, we suppose, deem it necessary to pass upon the question of the *bona fides* of the indebtedness of $1,500 embraced in the note and mortgage. The answer expressly alleged that the chattel mortgage was executed without any consideration, and that the wife had notice of this. The reply denied this allegation, and this issue of fact should have been passed upon in the findings.

The judgment of the district court will be reversed, and the case will be remanded for a new trial.

VALENTINE, J., concurring.

HURD, J., not sitting in the case.