SARAH E. COOPER V. THE FIRST NATIONAL BANK.

1. DEBTOR—*Assignment—Wife, a Preferred Creditor of Husband.* A debtor in failing circumstances may prefer his wife as a creditor, when his indebtedness to her is *bona fide*, by conveying only enough property to her to pay her claim, although such preference has the effect of removing all his property beyond the reach of his other creditors.

2. CHATTEL MORTGAGE—*Mortgagee to Account—Assignment of Claim.* Where a debtor conveys his property to his wife in payment of his debt to her, and she then turns it over to a national bank under a chattel mortgage on the property held by the bank to pay it and other indebtedness of her husband to the bank, and the mortgage contains a stipulation that the holder shall account for any balance remaining after payment of the same, and the bank by its cashier takes possession of the property, it cannot then, by simply assigning to another its evidences of indebtedness, relieve itself of its obligation to account to the wife for the remainder of the property, after the payment of its claims.

3. ——— *National Bank—Liability to Account.* Where a national bank, in order to secure its indebtedness, takes possession by its cashier of goods under a chattel mortgage and disposes of them, it cannot claim immunity from liability for any surplus remaining after payment in full of its claims, on the ground that its cashier, being an officer of a national bank, exceeded his powers and acted *ultra vires*.

*Error from Washington District Court.*

THE opinion states the nature of the action, and the material facts. At the June term, 1886, the court sustained defendant's demurrer to plaintiff's evidence. This ruling plaintiff *Cooper* brings here for review.

*A. S. Wilson,* for plaintiff in error.

*Lowe & Smith,* for defendant in error.

Opinion by HOLT, C.: In 1884, J. A. Cooper opened a grocery store in Washington, Kansas, with a capital of $800, money which he had borrowed from his wife, the plaintiff in this action. None of that money came to her from her husband; she got $769 of it from her mother, and the other $31

was her own. After he had been in business for a time, he took into partnership with him L. K. Knapp, and they continued the business under the name of Cooper & Knapp. Knapp did not put any money into the business, but gave his services; he was to share in the profits; and if after continuing the business for two years, it should prove remunerative and successful, there was to be a new contract of partnership, and he was to have some interest in the stock as well as in the proceeds. After they had been in business less than a year the firm of Cooper & Knapp was dissolved by mutual consent, Knapp turning over what interest he might possibly have had to Cooper; Cooper then conveyed the stock of groceries to his wife, Sarah E. Cooper, plaintiff in this action, in payment of the $800 loaned him. At that time the firm of Cooper & Knapp was indebted to the First National Bank of Washington in the sum of $624 in the aggregate, of which amount $450 was secured by a chattel mortgage on the stock of groceries, $150 on an unsecured note, and an over-draft of $24. Mrs. Cooper told the cashier of the bank of the condition of affairs, and turned over the entire stock to the bank with the understanding that its claim should be paid in full, and the surplus, whatever it might be, be turned back to her and the mortgage released. At this time there were other creditors of the firm of Cooper & Knapp, but this transaction was intended to make the bank and Mrs. Cooper preferred creditors. The bank, prior to obtaining possession of the goods, had not filed its mortgage for $450, and had permitted the goods to be sold by Cooper & Knapp the same after the mortgage was given as before. When the goods were turned over to the bank an inventory was taken, showing them to be of the value of $1,300; the bank then transferred the goods, and they changed hands two or three times in a few days without the knowledge or consent of Mrs. Cooper. She becoming uneasy, through her attorney wished to know how the business was being carried on, when he was informed by the cashier of the bank that if she wanted anything she could sue. This action was brought to obtain for Mrs. Cooper the amount

of the value of tl e goods, less the claim of the bank for $624. A jury was impaneled, and evidence introduced tending to establish the facts herein detailed, to which the defendant interposed a demurrer, which was sustained by the court; from that ruling the plaintiff brings the case here.

We think the testimony clearly establishes a cause of action in favor of plaintiff against defendant. This property was turned over under the mortgage and an agreement that the bank should be paid first, and afterward the residue should be paid to Mrs. Cooper. We see nothing wrong in such an agreement. Cooper and Knapp had a right to prefer their creditors, even if they both had remained in partnership; but this transaction was not of the ordinary partnership, and the creditors of Cooper & Knapp, whatever they might be under other circumstances, certainly in this case could have no greater rights or equities than Mrs. Cooper. The business was carried on solely upon money advanced by her to her husband; Knapp did not place a single dollar in the business; when he turned the matter over to his partner, Cooper had the right to prefer any one of his creditors. Cooper had the right to prefer Mrs. Cooper, his *bona fide* creditor, even though she was his wife, and even though the fact of her preference prevented the other creditors from receiving their pay out of his property. (*Bailey v. Kansas Mfg. Co.*, 32 Kas. 73; *Chendet v. Lahmer*, 16 id. 527; *Kelsey v. Harrison*, 29 id. 143; *Tootle v. Coldwell*, 30 id. 125; *Wilcox v. Kellogg*, 11 Ohio, 394; Waples, Attachm. & Garn., 59.)

The defendant claims that it was preferred as a creditor by Mr. Cooper, and not by plaintiff, and that whatever she did was a part of the consideration for her husband turning the property over to her. This is not supported by the evidence. The goods were transferred to plaintiff, and by her were turned over to the bank; to be sure, her husband wished to have the indebtedness of Cooper & Knapp to the bank paid. However, the goods were the property of Mrs. Cooper when she transferred them to the bank, subject to its mortgage upon them. The defendant further says, that it simply assigned its

claim against Cooper & Knapp, and as a part of such assignment, and an incident thereto, the goods passed as security for the payment of the claims. This course of business is proper when the mortgagee has not reduced the property mortgaged to possession, but in this case the defendant had taken possession of the goods, had caused an inventory to be taken, and by these acts was bound to account for the property in its possession. If the goods were taken simply to satisfy the mortgage, possibly the contention that both parties were bound by the express terms of the mortgage, and that the parol evidence would be inadmissible to vary it, might be correct, but there was $174 of indebtedness, besides the sum secured by the chattel mortgage, which was to be paid out of the proceeds. However, if they were taken simply under the terms of the mortgage, it is provided therein that when the mortgagee shall take possession of the same he may sell the goods, and shall render to the mortgagor or his representatives the surplus money remaining. This certainly does not give the mortgagee the authority to take possession of the goods, turn them over to another for the satisfaction of his claim, and relieve himself of all responsibility and liability to the mortgagor.

It is claimed that because the defendant is a national bank it had no right to take this property and agree to turn back the proceeds to plaintiff, and that the cashier, in making this agreement, exceeded his authority. The bank took the property to secure its own claim; it was all personal property, and was not of more than twice the value of the claim to be secured; it received the property, secured its own claim, and then refused to account for the balance. We think if it had the power to take the property and secure its own claim, it ought to have power to pay back the balance to plaintiff. It would be a very strange proposition of law for the bank to receive property upon a chattel mortgage or an agreement to secure its own claim, and not be compelled to account for any balance remaining after its own claim was satisfied.

We recommend that this case be reversed, and that the tria

be proceeded with in accordance with the suggestions herein contained.

By the Court: It is so ordered.

All the Justices concurring.