THE COMMERCIAL STATE BANK, *Appellee,* v. ANNIS BOATMAN, *Appellant.*

No. 18,018.

HEADNOTE BY THE REPORTER.

HUSBAND AND WIFE—*As Debtor and Creditor—Insolvent Husband.* Where a wife gives her money or property to her husband to assist him in his business, without any agreement or understanding for its repayment, he will not be permitted, as against his creditors, to transfer his property to her in repayment when he becomes insolvent.

Appeal from Woodson district court; OSCAR FOUST, judge. Opinion filed November 8, 1913. Affirmed.

*J. C. Culver,* of Yates Center, and *S. A. Gard,* of Iola, for the appellant.

*G. H. Lamb, W. E. Hogueland,* and *G. R. Stephenson,* all of Yates Center, for the appellee.

*Per Curiam:* This action was brought by the appellee to set aside two deeds to properties in Yates Center which were caused by appellant's husband to be made to her for the purpose, as alleged, of enabling him to defraud his creditors and especially the ap-

pellee.   There was evidence that for years the husband
had been given credit by appellee as the owner of
properties the title to which appeared to be in him on
the records of the register of deeds; that he had bor-
rowed from the appellee a part of the purchase price
of one of the properties in question and that the bor-
rowed money was used in such purchase; also that
he had traded a farm which he held in his own name
for city property in Iola, and that the appellant had
traded that property for the other property involved
in this action; also that after these conveyances to the
appellant her husband had no property left.   There-
after the indebtedness of the husband to the appellee
was converted into a judgment, execution issued
thereon, delivered to the sheriff, and the sheriff re-
turned thereon that no property of the husband's could
be found upon which to levy.   It also appeared that
some twenty or twenty-five years before the transfer
the appellant had let her husband have, at different
times, about two thousand dollars, but that she had
taken no note for the same and made no contract for
its repayment, but, as she testified, she just let him
have it.   As to one or two of the smaller items, she
testified she loaned it to him.   No account of the hus-
band's alleged indebtedness to the appellant is shown
to have been taken between them at the time of the
transfer, and no intelligible showing that the amount
of the alleged indebtedness to the wife was equal to or
approximated the value of the property transferred
was made at the time of the trial.

The court was justified in believing from appellant's
own testimony that during the years she was giving
him sums of her money she was doing so to aid him
in his business, and that the relation of debtor and
creditor did not then exist.   If such was the fact, he
should not be permitted, as against his creditor, to
give it back to her when insolvent, nor to cause his

property to be conveyed to her therefor. (*Bailey v. Kansas Mfg. Co.*, 32 Kan. 73, 3 Pac. 756.)

In *Dresher v. Corson, Sheriff, &c.*, 23 Kan. 313, it was said:

"We have repeatedly affirmed the right of the wife to purchase and hold separate property, real and personal, and whenever such right is exercised in good faith it is entitled to protection. But when property which is in the possession of and apparently belongs to the husband, and upon the faith of which he may properly have received credit, is at the time of his financial embarrassment claimed to have been purchased by, and to belong to, the wife, courts may well require clear and convincing proof, not merely of the fact, but also of the good faith of the purchase. Communications between husband and wife being privileged, the opportunity for fraud, if fraud is desired, is great, and searching inquiry is proper. When, pending a suit against him, a man of means transfers all his property, save that which is exempt, to his wife, and hires out to her for his 'board, clothing and lodging,' the transaction, to say the least, affords grounds for suspicion, and calls for satisfactory proof of good faith and fair consideration. Unless care is taken and courts are watchful, those laws which were designed for the protection of married women will become repulsive to the moral sense as mere covers for fraud." (p. 315.)

The judgment is affirmed.