## SPARKS vs. MACK, STADLER & CO.

1. INSTRUCTION:

   An instruction which contains long recitals of facts, that might tend to confuse, rather than simplify the issue, was properly refused.

2. FRAUDULENT CONVEYANCE:

   A sale of goods in good faith to pay a preferred debt, and without an intention to delay other creditors, is not fraudulent. A debtor may prefer one creditor to all others.

3. ———— ————.

   A party who conveys his property for the payment of a part of his debts, leaving others unpaid, cannot reserve an interest in it. The whole of his property is liable for his debts, and it is fraudulent to conceal any part of it from his creditors.

4. ———————.

   A conveyance by a debtor in failing circumstances, which stipulates that the grantee may use the proceeds of the sale of the goods to buy others, and imposes upon him the duty of keeping up the stock, etc., clearly shows that the exclusive ownership of the property was not vested in the grantee, and is void as to creditors.

5. ————: Evidence.

   Upon an issue as to whether a conveyance was fraudulent as to creditors, the circumstances and relationship of the parties to the conveyance, the terms of the conveyance, whether absolute or conditional, and the subsequent possession of the property, may all be considered in arriving at the intention of the parties.

APPEAL from *St. Francis* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

*Adams,* for appellant.

*Brown, contra.*

WALKER, J.:

Mack, Stadler & Co. brought an action of assumpsit, in the Circuit Court of St. Francis County, against William M. Sparks and William C. Barron, merchants, trading under the firm name of Sparks & Barron, and had goods attached as their property.

G. N. Sparks, the appellant, claimed the goods as purchaser from Sparks & Barron, and filed his interplea, in which he asserted his claim to the goods.

Plaintiffs answer the interplea, and allege that the sale of the goods by Sparks & Barron to G. N. Sparks was made in fraud of the rights of their creditors, and is void.

The only contested question at issue, was that of fraud, which was submitted to a jury upon the evidence and instructions of the court.

The jury found a verdict for the plaintiff, upon which judgment was rendered in their favor.

Sparks moved for a new trial, which was overruled, and he appealed to this court.

The questions of law presented for our consideration arise upon the instructions of the court, which are as follows :.

*First*—The question which you are to determine by your verdict is, was the property named in the interplea, at the time of the levy of the attachment, the property of G. N. Sparks?

*Second*—The title of the interpleader is sought to be set aside by the attaching creditor for fraud, and upon this inquiry the law is, that if the interpleader was not, at the time of his purchase of the goods, a party to the fraud of Sparks & Barron (if they were

guilty of fraud), the jury will find for the interpleader, for, however fraudulent may have been the purpose of Sparks & Barron in the sale of the goods, yet, if G. N. Sparks was not a knowing party to, and participant in the fraudulent purpose, he would take the property, free from any claim of the attaching creditor.

*Third*—Fraud is a question of fact, not to be presumed, but must be proven, and unless the jury find, from the evidence, that G. N. Sparks, at the time of his purchase, was a party to a fraudulent transaction on the part of Sparks & Barron, to cheat, hinder, or delay their creditors, and accepted the conveyance of the goods for that purpose, they will find for the interpleader.

The fourth and fifth instructions were refused ; they are as follows :

*Fourth*—If the jury find, from the testimony, that Sparks & Barron, at the time of the sale of the goods to the interpleader, was indebted to the plaintiffs, and, also, to Stewart, Gwynne & Co., in a sum as large, or larger, than to any, or all, of their creditors ; that Stewart, Gwynne & Co. were present, urging the payment or securing of their debt, to pay which, Sparks & Barron, with the assent of Stewart, Gwynne & Co., sold the goods to the interpleader on a fair and reasonable credit, secured by a deed of trust executed by the interpleader to the bookkeeper of Stewart, Gwynne & Co.; that in the transaction it was a part and parcel thereof ; that the notes of the interpleader were to be endorsed to Stewart, Gwynne & Co., as payment of so much of a *bona fide* debt of Sparks & Barron, to Stewart, Gwynne & Co.; that, in pursuance thereof, said notes of the interpleader were so taken by Stewart, Gwynne & Co., in payment of so much of said debt, and the paper of Sparks & Barron given up to them for said notes, these transactions were not fraudulent, but such as Sparks & Barron might lawfully make.

The substance of the fifth instruction was: That a creditor in failing circumstances may lawfully apply his property to the payment of his debts to one creditor to the exclusion of all others.

The fourth instruction was, as will be seen, a long recital of facts supposed to be proven, a kind of omnibus, gathering a multitude of facts, the finding of all which is necessary to arrive at a conclusion, and in the form asked might tend to confuse rather than simplify the issue, and we think the court properly refused to give the instruction, as well as the fifth, in the form asked, but gave to the jury in lieu thereof the following instruction:

"If the jury believe from the evidence that the sale of the goods was made in good faith to pay a debt to Stewart, Gwynne & Co., only as a preferred creditor, and without any intention to delay other creditors, it is not a fraud, for a debtor may prefer one creditor to all others."

At the instance of the plaintiffs, the court gave the following instructions:

"If the jury find from the evidence, that at the time of the sale and conveyance from Sparks & Barron to G. N. Sparks that a secret agreement existed between the seller and the buyer, by which an interest, either as partner or otherwise, in the property sold, was retained by William M. Sparks, the transaction was fraudulent and void, and that the property did not vest in the interpleader, but was subject to attachment."

"*Second*—A deed shown to have been void in its inception cannot be made good by any subsequent parol agreement between the parties; consequently, if the jury find that at the time of the execution of the deed, William M. Sparks retained an interest in the goods conveyed, no subsequent agreement could make the original transaction valid."

These instructions were proper. The party who conveys his property for the purpose of paying his debt, must do so in good faith; he is not permitted apparently to sell the whole of the property, and at the same time to reserve to himself an interest in it. The whole estate of the debtor is liable to the payment of his debts, and it is fraudulent to conceal any part of it from his creditors.

"A conveyance," says Bump., in his work on Fraudulent Conveyances, p. 239, "by the owner of property to another in trust for himself, is, in effect, a conveyance to himself, and such a measure can never be necessary for any legal or honest purpose."

At page 243, the same author says: "If the transfer is intended in good faith to have operation in favor of the grantee, and to confer upon him a right, to be exercised at his pleasure, over the property, it will be valid; but if it is a mere sham, executed colorably, and only for the purpose of protecting the debtor, and without any original intention to convey the property to the grantee, it is void."

The restrictions thrown around the property conveyed to G. N. Sparks, clearly showed that the exclusive ownership of the property was not in him. If, in fact, the property was his, there could certainly have been no necessity to stipulate that he might use the proceeds of the sale of the goods to buy others, or to impose upon him the necessity of keeping up his own stock of goods; this he would, as the real and sole owner, do at his own discretion and pleasure.

A provision, much like that in this case, was inserted in a conveyance in the case of *Robinson* v. *Elliott*, 22 Wall, 513, which was held to be void as against creditors. The clause in the deed in that case was as follows:

"And it is hereby expressly agreed, that until default shall be made in the payment of the notes, the party of the first part may

retain possession of said goods, and may sell the same as heretofore, and supply their places with other goods, substituted by purchase for those sold, and shall, upon buying, put them into the store for sale, subject to the lien of the mortgage."

This is just such a stipulation as is found in the deed to G. N. Sparks, and if we should construe the deed as the appellees' counsel would have us do, as in effect a mortgage security, it would come expressly within the ruling of the United States Court. When considering the effect of the above recited clause, in the deed in *Robinson* v. *Elliott*, Mr. Justice Davis said : "The deed is void, and the court, not the jury, has the power to say whether on the face of the mortgage it was void."

In the case of *Jenkins* v. *Lande:* An absolute sale of a lot was made for a stipulated sum expressed in the deed, and paid, with a parol agreement to permit the party selling the lot to occupy it for one year free of rent.

The sale was held, as against the creditors, void, upon the ground, said Mr. Justice Davis: That the law will not permit a debtor in failing circumstances to sell his land and convey it without reservation, and yet secretly reserve to himself the right to possess and occupy it for a limited time for his own benefit, at the expense of those he owes, and is a fraud upon them, because it places beyond their reach property which should be subject to the payment of their debts.

In the case of *Paul* v. *Croker*, 8 N. H., 288 : It was held, that where by a bill of sale, goods are absolutely conveyed, with a secret trust not apparent on the face of the instrument, such conveyance is fraudulent and void as against creditors.

In none of these cases, the question of the extent of the possession or use, or the value of the property concealed, seems to influence the decision of the court, but it is held to be sufficient in all of them, to set aside the entire conveyance as fraudulent.

Judge Spencer, in the case of *Austin* v. *Bell,* 20 Johns., 442, reviewed the New York decisions, and asserts the principle clearly, "that a deed which does not fairly devote the property of a person overwhelmed in debt, to the payment of creditors, but reserves a portion to himself (unless assented to by the creditors), is, in law, fraudulent and void, and, whether apparent upon the deed or not, its effect is to coerce the creditors to a settlement, by embarrassing or delaying their remedy."

These authorities, we think, sustain the court in the instructions given, and in refusing those asked by the interpleader. They were not abstract, but had direct application to the state of case presented by the evidence.

In the first, second, third and fourth instructions, the jury were told that Sparks & Barron had an undoubted right, in good faith, to sell their goods for the purpose of paying their debt to Stewart, Gwynne & Co., even though, at the time of selling, they were in failing circumstances, and unable to pay all of their debts, and that G. N. Sparks, even with a knowledge of such circumstances, had a right, in good faith and in ignorance of the intended fraud by Sparks & Barron, to buy the goods, and that if he did buy under such circumstances, he should be protected in his purchase. The court told the jury further that fraud was not to be presumed, but it must be proven. Not certainly by positive evidence in all cases, but also from facts and circumstances, such as, when considered separately, may lead to no satisfactory conclusion, but, when taken together, often become strong and satisfactory evidence.

The circumstances of the parties contracting, the relationship existing between them, the failing circumstances of the one, or the inability of the other to pay for the property purchased, the terms of the sale, whether absolute or conditional, the subsequent possession of the property, whether permitted to remain with

the seller, or taken possession of by the purchaser, may all aid in reaching a proper conclusion as to the intention of the parties at the time of making the contract.

It is rarely the case that parties intending to perpetrate fraud, openly disclose their real purpose, but on the contrary, often make a pretense of fairness and honesty, to conceal their real intention, which, so far from serving the purpose intended, sometimes leads to discovery and exposure of the fraud.

In the case under consideration, we find from the evidence that two partners, Sparks & Barron, who are unable to pay their debts, making sale of their real estate. One conveys by deed 20th February, 1875, for the consideration of $2,500. The other, on the 6th April, 1875, conveys his lands to his mother for $3,000, and, on the 21st of the same month, only fifteen days after, the firm sell and convey their stock of goods to a brother of one of the firm, who is unable to pay anything down for the goods, or, for aught that appears, had any means of payment at the time of the sale of the goods. A member of a firm at Memphis, Tennessee, one of the principal creditors of Sparks & Barron, with their bookkeeper, is found at the store of Sparks and Barron in Forrest City, Arkansas, and about the same time there also comes to the store G. N. Sparks, who had been residing in Craighead county, Arkansas. The debt of the Memphis firm was $9,000, more, according to the evidence, than all the other indebtedness of the firm. It is but fair to presume that the Memphis firm were there to get pay for their debt, or have it secured. The fact that they had their bookkeeper along, aside from other considerations, would indicate this purpose. Whether they had heard of these conveyances of the real estate, or had been invited by Sparks & Barron to come, does not appear.

Sparks & Barron propose to Gwynne, of the firm of Stewart, Gwynne & Co., to sell them their stock of goods in store.

*Vol. xxxi.—43.*

Gwynne declines to purchase, but suggested to Sparks, of the firm of Sparks & Barron, to get some one to buy them out, and for him to take an interest in the goods as a silent partner with such purchaser.

W. M. Sparks, who was examined as a witness, says he told Gwynne that his brother, G. N. Sparks, had recently come from Jonesborough, to go into business at Forrest City, and perhaps he could induce him to make the arrangement; that he saw his brother, G. N. Sparks, who agreed to become the purchaser, witness to be a silent partner in the business with him. This statement is fully corroborated by G. N. Sparks. Gwynne also corroborated this statement, only that he knew nothing of the understanding that W. M. Sparks, of the firm of Sparks & Barron, was to become a silent partner. Giving his statement due consideration, and that of the witness, Dobb, who heard nothing said about W. M. Sparks being a partner in the purchase, we are satisfied that the statement of the two parties, actors in the contract, and familiar with the terms of the contract itself, is most reliable, and leaves but little doubt that such was the contract agreed upon when the sale of the goods to G. N. Sparks was made. According to his evidence, he was unable to buy and pay for the goods, but bought them on time; gave his notes to Sparks & Barron for $5,000, to be paid in three several payments, one of this firm, if we are to credit his own statement, being a secret partner in the purchase of the goods. According to the weight of the testimony, this plan was suggested by Gwynne, and carried out by William M. Sparks, one of the firm to whom the notes were given, and which were endorsed and turned over to Stewart, Gwynne & Co. The sale of the goods was, in the meantime, to go on, and the money arising from the sale to be applied to the purchase of other goods, to keep up the establishment, and, of course, for the benefit, apparently, of G. N. Sparks, but,

really, for the benefit of a member of the firm, who' was responsible for all of the debts, but who was not to be known as interested in the goods; and then, as if to make assurance doubly sure, G. N. Sparks conveys the goods to Dobb, the bookkeeper of Stewart, Gwynne & Co., absolutely as his property, but not to go into his possession unless upon the contingency that after the first note fell due, 30th September after the purchase, payment was not made. In the meantime, the goods were to remain in the hands and under the control of G. N. Sparks and his secret partner.

The goods were to remain, and did remain, in the storehouse of Sparks & Barron, all the time they were in the possession of G. N. Sparks, and after they passed into the possession of Dobb, the trustee, and were still in the same storehouse when levied upon by the attaching creditor.

Why, if Dobb really held or claimed the' goods, as trustee, to pay the debt of Stewart, Gwynne & Co., he has failed to set up claim to the goods, is not accounted for, or why, if Stewart, Gwynne & Co. had beneficial rights in the trust property, they have not asserted their claim, is alike unaccounted for. G. N. Sparks is the only claimant; the issue is between himself and the attaching creditor. Upon his oath as a witness, he says he has no interest in the suit, nor in the goods attached. If such is the case, it is not improbable that he is merely a nominal party; certainly, if he is to be believed, the goods are not his, and he has no interest in them; he says, moreover, that he has taken in the notes which he gave to Sparks & Barron, and which they assigned to Stewart, Gwynne & Co.

It was under this state of case that the instructions were given, and upon consideration of which the jury found that the goods were not the property of the interpleader.

We think the instructions were properly given, and the verdict in accordance with the weight of the evidence.

Let the judgment of the court below be in all things affirmed.