THE FIRST NATIONAL BANK OF EMPORIA V. RIDENOUR, BAKER & CO. *et al.*

46   707
46   718
46   707
49   438
46   707
53   721
46   707
s57  117

1. CHATTEL MORTGAGE, *Given by a Firm to a Bank.* A chattel mortgage by a firm to one of the members thereof, as nominal mortgagee, to secure a note executed by the members of the firm to a bank, representing a *bona fide* indebtedness, in which the note is copied, and it is expressly stated therein that the mortgage is given to secure the payment of said note to said bank, *held*, that the security is given by the firm to the bank.

2. ——— *When not Void in Hands of Bank—Fraud.* Where the court, in a foreclosure proceeding on said mortgage, finds that the mortgage was executed by the mortgagors to hinder and delay their creditors, but the bank did not know of or participate in the fraudulent intent of the mortgagors, such mortgage would not be void in the hands of the bank, in favor of subsequent attaching creditors, though the nominal mortgagee knew of and participated in the fraudulent intent of the mortgagors.

*Error from Barber District Court.*

THE opinion, filed March 7, 1891, contains a sufficient statement of the material facts, pleadings and proceedings in the case.

*Sluss & Stanley,* for plaintiff in error.

*Kellogg & Sedgwick,* and *Brooks & Coffin,* for defendants in error.

Opinion by STRANG, C.: Action by the plaintiff to foreclose a chattel mortgage, begun in the district court of Barber county, Kansas, October 2, 1886. August 30, 1886, the firm of Lovejoy & Glasscock, being indebted to the plaintiff in the sum of $10,000 and accrued interest, executed a chattel mortgage to C. J. Lovejoy to secure said indebtedness, which mortgage was filed in the office of the register of deeds of Barber county September 1, 1886, at half-past 7 o'clock A. M. On the same day Lovejoy & Glasscock executed a chattel mortgage to C. J. Lovejoy, to secure an alleged indebtedness of said firm to him, the said C. J. Lovejoy, in the sum of

$4,500, which mortgage was filed with the register of deeds of said county at the same time with the first above-mentioned mortgage. No claim is made by C. J. Lovejoy under this latter mortgage so far as this case is concerned. Several days after the filing of said mortgage with the register of deeds, attachments were levied upon the goods therein described, in suits against Lovejoy & Glasscock, in favor of Ridenour, Baker & Co., the National Bank of the State of Illinois, and Kuh, Nathan & Fisher, in each of which cases judgment was obtained against Lovejoy & Glasscock. Each of said attaching creditors was made a defendant in this case. October 15, 1887, the case was tried by the court without a jury, the court making the following findings of fact and conclusions of law, and rendering a personal judgment in favor of the plaintiff upon its note against C. J. Lovejoy, H. C. Lovejoy, and A. C. Glasscock, but holding the mortgage of the plaintiff void as against Ridenour, Baker & Co., the National Bank of the State of Illinois, and the other attaching creditors of the defendants, Lovejoy & Glasscock, represented in the case:

"FINDINGS OF FACT.

"1. The firm of Lovejoy & Glasscock executed the mortgage described in the plaintiff's petition, and delivered the same to C. J. Lovejoy.

"2. At the time of the execution of said mortgage, the firm of Lovejoy & Glasscock was justly indebted to plaintiff to the amount of the note described in the petition, which is the indebtedness to the First National Bank of Emporia, in said mortgage described, and was also justly indebted to the National Bank of the State of Illinois, which is also described in said mortgage, neither of which debts has been paid.

"3. At the time of the execution of said mortgage, the said C. J. Lovejoy was a member of the firm of Lovejoy & Glasscock, and liable for all the debts of said firm. At and prior to the time of the levy of the several attachments mentioned in this case, the said C. J. Lovejoy was in the actual and exclusive possession of the property involved in this action, claiming the same under said mortgage.

"4. The said mortgage was given to hinder, delay and defraud the creditors of the firm of Lovejoy & Glasscock, which

said intent was known to and participated in by the defendants, C. J. Lovejoy, H. C. Lovejoy, and A. C. Glasscock.

"5. The plaintiff had no knowledge or notice of such intent, and did not participate therein.

"6. The value of the mortgaged property was not in excess of the debts described in said mortgage.

"7. At the time of the execution of the notes to the First National Bank of Emporia, and the National Bank of the State of Illinois, mentioned in the chattel mortgage set out in the petition, the defendant C. J. Lovejoy was a member of the firm of Lovejoy & Glasscock, and he was one of the principals of said notes, and not simply a surety therein.

"8. At the time of the commencement of the action the defendants, Ridenour, Baker & Co., the National Bank of the State of Illinois, Kuh, Nathan & Fisher, the Alcott Packing Company, the Gauss-Shelton Hat Company, and Charles Nelson, each had a valid attachment lien upon the property, or some portion of it, which was included in the chattel mortgage set out in the plaintiff's petition, and which was taken possession of by the receiver herein."

"CONCLUSIONS OF LAW.

"As conclusions of law based upon the foregoing findings of fact, the court finds that the chattel mortgage set out in plaintiff's petition is void; and that plaintiff has no right to or lien upon any of the funds in the hands of the receiver herein, and that the defendants, Ridenour, Baker & Co., the National Bank of the State of Illinois, Kuh, Nathan & Fisher, the Alcott Packing Company, the Gauss-Shelton Hat Company, and Charles Nelson, are entitled to said funds in the hands of the receiver in accordance with their several attachments."

It is asserted that all the evidence which was received and considered on the trial of the cause in the court below is not returned in the record to this court; and an examination of the record seems to sustain the claim. But as, from our view of the case, the findings of fact made by the court below are not to be disturbed, we have not examined the record to see whether sufficient evidence is returned to sustain such findings.

The next contention of the defendants is, that there is such a want of parties in the case as presented to this court that

the case here must necessarily be dismissed.   Defendants claim that the Alcott Packing Company, the Gauss-Shelton Hat Company and Charles Nelson were parties defendant in the case below, and are therefore necessary parties to the case in this court, and, not having been made parties herein, this case must be dismissed.   It is true that the parties mentioned were included in the petition of the plaintiff filed in the district court, but there is no evidence in the record that they were ever served with process.   So far as appears from the record, none of them filed any pleadings in the case, or in any other way appeared on the trial thereof.   We find in the record the following stipulation:

"It is admitted by the plaintiffs that the goods in controversy were attached in the case of Ridenour, Baker & Co. and the case of the National Bank of the State of Illinois against the Lovejoy-Glasscock Trading Company, otherwise Lovejoy & Glasscock, H. C. Lovejoy, and A. C. Glasscock, also Kuh, Nathan & Fisher against the same parties, in actions pending in the district court in Comanche county, Kansas; that the levying of the attachments and all proceedings in said cause were regular; that judgments have been procured in said causes against all the defendants in the following sums: In favor of the National Bank of the State of Illinois, for the sum of $21,500; in the case of Kuh, Nathan & Fisher, $2,100; and in case of Ridenour, Baker & Co., for $1,907.45, and that said judgments have not been paid."

There is no evidence in this record of the pendency of any suit on the part of the Alcott Packing Company, the Gauss-Shelton Hat Company, or Charles Nelson, or any other party, against Lovejoy & Glasscock, not included as defendant here. There is no judgment in favor of any other parties against Lovejoy & Glasscock, affecting the goods in controversy, so far as we can learn from the record.   It is true that the court in its 8th finding says that, in addition to the parties to this record, the Alcott Packing Company, the Gauss-Shelton Hat Company and Charles D. Nelson each had a valid attachment lien upon the property, or some portion of it, which was included in the chattel mortgage set out in plaintiff's petition.

But as there was no pleading or other appearance by such parties on the trial of the case in the court below, and no stipulation in respect to them, and there being a stipulation in respect to the cases of the parties made defendants in this court, we do not think it sufficiently appears that these alleged omitted parties were parties to the trial of this cause in the court below in such a way as to make them necessary parties here. They obtained no judgments in the court below. The journal entry showing the judgment of the court below contains the following significant words. After reciting the National Bank of the State of Illinois and Ridenour, Baker & Co. as *parties* to the judgment, the court adds: "And the other attaching creditors of the defendants Lovejoy & Glasscock, *represented herein.*" The words "represented herein" show that there were attaching creditors of Lovejoy & Glasscock not represented in this cause in the court below.

The real question upon the merits of the case arises out of the character to be given the mortgage sought to be foreclosed by the plaintiff. The mortgage was either given by the firm of Lovejoy & Glasscock, whoever that might include, to indemnify C. J. Lovejoy for some liability or assumed liability of his for the debt of the firm, or it was given and intended as security for the plaintiff, the First National Bank of Emporia. It was not given to C. J. Lovejoy to secure any principal debt from the firm to him, in which a third party or stranger to the instrument could only take under it by assignment, for there was no pretense that there was any principal debt owing by the firm to C. J. Lovejoy, except the debt of $4,500 secured by the other mortgage, and no pretense that the debt named in the mortgage of plaintiff was due from the firm to C. J. Lovejoy in any way, except as by their contention he was a surety on their note to the plaintiff. Was the mortgage in controversy given to indemnify C. J. Lovejoy as surety on their debt to the bank? This question must be answered in the light of the findings of fact made by the court below, as well as the other matters in the record bearing upon the question. The note representing the indebtedness secured

by the mortgage was signed by C. J. Lovejoy, H. C. Lovejoy, and A. C. Glasscock, each an apparent principal on the note. If he had not been a partner in the firm, he might have signed as an apparent principal, and still have been, as between himself and the other makers of the note, a surety. But the finding of the court makes him a partner with H. C. Lovejoy and A. C. Glasscock in the firm of Lovejoy & Glasscock; and it is difficult to see how, if he was primarily liable as a partner for the debt of the firm to the plaintiff, and signed the note as an apparent principal, he was anything but a principal debtor on the note. If he was principal on the note as between himself and his co-makers, he could not be a surety thereon, and the mortgage could not have been made to him to indemnify himself. The court also finds that he was a principal, and not a surety on said note. The security tendered in a mortgage like the one in controversy is not to him who may be nominated therein as a party of the second part, but to the owner and holder of the debt therein identified as the debt to secure which the mortgage is given. While C. J. Lovejoy is nominated as party of the second part in this mortgage, the mortgage upon its face declares it is given to secure the debt due the Emporia National Bank, the plaintiff in this case, and, so far as this case is concerned, for no other purpose, because it provides that upon the payment of the debt of the plaintiff such mortgage shall be null and void. It is apparent that C. J. Lovejoy is a mere nominal party to said mortgage, and that all the rights accruing thereunder inure directly to the beneficiary therein named, the Emporia National Bank, and that Lovejoy took nothing thereunder. By the execution and delivery of said mortgage, the mortgagors undertook to and did set apart property for a specific purpose, to secure the payment of a specified debt, and thereby conferred upon the owner and holder of the debt named an equitable lien that could not be discharged or otherwise interfered with by the nominal mortgagee. Such lien having attached, it remains good against all persons, except purchasers without

1. Chattel mortgage, given by a firm to a bank.

notice. In this case there were no such purchasers, and the attachments were levied several days after the mortgage was filed with the register of deeds.

In the case of *Eastman v. Foster*, 8 Metc. (Mass.) 19, it is said:

"The court are of the opinion that the mortgage made by Cushmans, the principal debtors, to Eastman, the surety, conditioned to pay the notes and indemnify him, did create a trust, and an equitable lien for the holders of the several notes; that the mortgagee held the property subject to such trust; and that it created an equitable lien thereon for the security and payment of the specified debts."

In *Bank v. Lee*, 27 Am. Dec. 713, it is held:

"Property mortgaged to a surety to secure him for indorsing the mortgagor's note, whether such property be real or personal, may be subjected to the payment of such note by a bill filed by the creditor, where the debtor is insolvent. In such case the creditor need not levy execution so as to obtain a lien upon property mortgaged to a surety for the same debt for his indemnity, as he has an equitable lien upon the property so mortgaged. The security or fund is created for the payment of the debt, and is a trust existing for that specific purpose, and whether the creditor or the surety be trustee is very immaterial. The trust is created ultimately for the benefit of the creditor."

In *Russell v. Clark*, 7 Cranch, 69, the court declare —

"That the person for whose benefit a trust is created, who is ultimately to recover the money, may sustain a suit in equity to have it paid directly to himself."

"In some states a distinction seems to be drawn between cases where security is given for indemnity only, and where it is given both for indemnity to the surety, and to secure the debt. Where it is given to secure the debt as well as indemnity, there would seem to be little doubt that the creditor, whether cognizant of the assignment and its purpose or not, at the time of the assignment, could, when it came to his knowledge, avail himself of it as effectually on maturity of his debt as he could had it been assigned to him directly. But when the assignment is for indemnity only, some courts have held that the surety's right to apply the security as he pleased is inconsistent with the idea of a trust in favor of the creditor, and that

the creditor can only reach the security by way of subrogation after the surety has been damnified, actually or constructively. The great weight of authority, however, is against the proposition that the creditor's right is rooted in the doctrine of subrogation. The assignment of security by the principal to his surety is an appropriation of funds for the ultimate discharge of the debt for which he is holden. The surety has the right to apply the security directly to the payment of the debt. If the surety pays with his own funds, he keeps his principal's debt on foot against him, and then applies the security to its payment. Thus, in any event, the funds of the principal are made to satisfy the principal's debt, and this accords with the purpose of the principal when he gave the security. If the surety, after assignment of the security, becomes insolvent, or by any act of the creditor is discharged from liability, he holds the security in trust for the creditor." (*Cullum v. Br. Bank*, 23 Ala. 797; *Clark v. Ely*, 2 Sandf. Ch. 166.)

"The clear deduction from the cases is, that an assignment of securities by the principal to his surety for indemnity merely raises an implied trust in favor of the creditor, which, on maturity of his debt, he may enforce, whether the surety has been damnified or not, and irrespective of the question whether the surety or principal, either or both, are solvent."

(*New Bedford Inst. for Savings v. Fairhaven Bank*, 9 Allen, 175; *Kramer's Appeal*, 37 Pa. St. 71; *Rice's Appeal*, 79 id. 168; *Insurance Co. v. Ledyard*, 8 Ala. 866; *Moore v. Moberly*, 7 B. Mon. 299; *Curtis v. Tyler*, 9 Paige, 432; *Ten Eyck v. Holmes*, 3 Sandf. Ch. 428; *Paris v. Hulett*, 26 Vt. 308; 1 Story, Eq. Jur., § 499 (Redf. Ed.); Brandt, Sur., § 293.)

"A mortgage deed, given by the principal maker of a promissory note, conditioned that the principal will pay the note and save the surety harmless, creates a trust and an equitable lien for the holder of the note, and the surety holds the mortgaged property subject to such trust and lien, even after the holder's claim on him to pay the note is barred by the statute of limitations, and though the property, as between the mortgagor and mortgagee, may have become absolute by foreclosure. The trust created by such mortgage is not secret; and when the mortgage is recorded, it gives constructive notice of the trust to all creditors and purchasers, so that they cannot, by attachment or grant, take it discharged of the trust." (8 Metc., Mass., 19.)

It will be seen from the authorities cited that, even where the security is given to indemnify the surety solely, an equitable lien attaches to the securities in favor of the principal debtor, which he may enforce by a direct proceeding. His right does not depend on the law of subrogation. This right becomes stronger when the securities are delivered not only to indemnify the surety, but to secure the principal debt; and where, as in this case, from the terms of the mortgage, and the finding of the court, the nominal mortgagee is not a surety, and the security by its terms is delivered for the sole purpose of securing the principal debt, which it clearly identifies, it seems there can be little doubt about the right of the principal debtor to enforce, in a direct proceeding, the payment of his debt out of the security given. The execution and delivery of the mortgage sued on was the setting apart of the property to pay the debt therein named and identified; and the principal debtor at once obtained an equitable lien thereon, which, when the mortgage security was recorded, was good against any act of the mortgagor or nominal mortgagee, or any lien of creditors of the mortgagor obtained subsequent thereto, and that, too, though the principal debtor did not at the time know of the execution and delivery of the security, provided he afterward accept the security tendered. This right of the owner and holder of such security may be enforced in the name of such owner, without any regard to the nominal mortgagee.

"The beneficiary will be presumed to have accepted the fund deposited or raised for the ultimate satisfaction of his demand. It is the trust fund, and not the trustee as an individual, that gives a court of equity jurisdiction; and having the fund under its control, the court will decree in favor of the parties entitled." (*Breedlove v. Stumph*, 3 Yerg. 257.)

"The assent of the person selected as trustee is not necessary to the validity of the deed. If he refuse to execute it, a court of chancery will execute it. The assent of the beneficiary in the deed may be given any time after the deed is executed, and, in the absence of proof to the contrary, will always be presumed." (*Field v. Arrowsmith*, 3 Humph. 442.)

"It will be presumed on the part of the beneficiaries under a deed of trust, in the absence of proof to the contrary, that each accepts the provisions made for his benefit, and such acceptance may be given at any time after the conveyance is made, unless renounced or waived; and such acceptance, in fact, will relate back to the day of registration." (*Furman v. Fisher*, 4 Coldw. 626; 94 Am. Dec. 210.)

Finally, it is contended that because C. J. Lovejoy was made the nominal mortgagee in the security claimed by the plaintiff, and the trial court found that the mortgage was made by the mortgagors to hinder and delay their creditors, and that C. J. Lovejoy participated in the fraudulent intent of the mortgagors, that the mortgage is necessarily void as a security in favor of the plaintiff, though the court also found that the plaintiff knew nothing of such fraudulent intent of the mortgagors. It is said that C. J. Lovejoy took nothing under the mortgage because of the fraudulent intent in which he participated, and that the plaintiff could get no more rights under the mortgage than C. J. Lovejoy got; that whatever rights the plaintiff got under the mortgage came to it from C. J. Lovejoy. If the plaintiff got no more rights under the mortgage than C. J. Lovejoy got, then, indeed, it might as well go out of court, for C. J. Lovejoy got no rights at all under the mortgage except that of mere nominal mortgagee, or the right of a mere naked trustee. He got no right to any of the security for any purpose. If he had refused to act as trustee of the trust, the plaintiff's rights would not thereby have been affected. Its lien upon the security would have remained the same, and it could have enforced it without his aid. He had no power to affect its rights. He could not have discharged its lien, nor could he have satisfied the mortgage. The plaintiff took nothing by, through or under him, but had and has its lien upon the security without regard to him, by the direct act of the mortgagors in setting aside property to secure and pay its debt, and, when once the assignment of the security was made, in spite of him, or any act of his. He did not in any way represent the plaintiff by any act, request, or authority

from it. Nor does the plaintiff take from him by assignment, or any other act of his, nor by being in law subrogated to any rights of his. The firm of Lovejoy & Glasscock owed the plaintiff a *bona fide* debt of $10,000. The firm had the right to secure such debt by making the mortgage, and the fact that it used C. J. Lovejoy as a nominal mortgagee in the security it was assigning to the plaintiff could not invalidate the security in the hands of the plaintiff, no matter what its intent was in making the mortgage, nor how much he whom it chose to act as nominal mortgagee knew of its intent. The plaintiff bank knew nothing of any wrongful intent; and it is probably true, under the authorities, that any amount of knowledge of the intent of the mortgagors, on the part of the plaintiff, would not render the mortgage void in its hands in favor of liens created after the recording of the mortgage, so long as the debt to secure which it was given was *bona fide*, and it got by its security no more than the fair value in property of the debt secured. (*Worland v. Kimberlin*, 6 B. Mon. 608; 44 Am. Dec. 785, and cases there cited; *Covanhovan v. Hart*, 21 Pa. St. 495 [60 Am. Dec. 57]; *Cooper v. National Bank*, 40 Kas. 5.)

2. Chattel mortgage, valid in hands of bank; fraud.

We are of the opinion that the court below was mistaken in its conclusion of law upon the facts as found. The judgment of the court below is therefore reversed, and the cause remanded with instructions for the court below to enter a decree in favor of the plaintiff for the foreclosure of its mortgage, and the application of the proceeds thereof to the payment of its debt.

By the Court: It is so ordered.

All the Justices concurring.