NOYES vs TOOTLE.

Opinion delivered January 12, 1899.

*1.  Right of Debtor to Prefer Creditor—Burden of Proof to Show Fraud.*

A failing debtor may in good faith prefer one creditor to the exclusion of another, and the burden of proof is on one attacking such preference as fraudulent, to show fraud.

*2,  Right of Creditor to Take Property to Secure Claim.*

A creditor may take property at a fair price, in good faith to secure his debt, notwithstanding the effect may be to hinder and delay other creditors.

*3.· Fraudulent Conveyance—Not Invalid Unless Grantee Participates in Fraud.*

A fraudulent intent on the part of a mortgagor to hinder and delay his creditors, does not invalidate a mortgage to secure a

bona fide debt, unless the mortgagee participates in the mortgagor's fraud.

4. *Fraud—Notice to Agent.*

Notice of the fraudulent intent of the mortgagor, by the agent of the mortgagee, is notice to the mortgagee.

5. *Record—Instruction—Presumption in Absence of Evidence.*

Where the evidence is not in the record the general presumption will save the instructions, if they can be regarded as correct upon any supposable state of facts under the issues.

6. *Partnership—Evidence—Instruction.*

In the absence of the evidence in the record, an instruction that if the jury found that a partnership existed between the mortgagor and one of the mortgagees, would render the mortgage void, will be presumed to be correct.

7. *Witness Testifying Falsely—Instruction.*

In an instruction that if the jury believes that any witness has "intentionally" testified falsely they might disregard his testimony, "intentionally" is equivalent to "knowingly and willfully."

8. *Partnership—Definition.*

The court instructed the jury "that a partnership is an association of two or more persons in some enterprise or business in which the various partners share in the profit and loss to some degree; * * * and the name under which the business is conducted is not a test of the existence of the partnership." *Held*, Not erroneous, under the facts of this case.

Appeal from the United States Court for the Northern District.

WILLIAM M. SPRINGER, Judge.

Action by Tootle, Wheeler & Motter against W. V. Carey and others. Noyes, Norman & Co. and others filed

( 10 )

interpleas.   Judgment for plaintiffs.   Interpleaders appeal.
Affirmed.

On May 24, 1895, the plaintiffs below, appellees here,
brought suit against W. V. Carey and Robert B. Croam, do-
ing business under the firm name of W. V. Carey, for $942,
on an account for goods, wares, and merchandise, and pro-
cured an attachment on the ground that the defendants had
sold their property with the fraudulent intent to cheat and
defraud their creditors.   Attachment was levied on stock of
general merchandise, and the appellants gave bond for the
same as interpleaders.   On December 5, 1895, defendant
Robert B. Croam filed his separate answer, denying that he
was a partner with Carey when the goods were purchased,
or at any other time, and denying any indebtedness to plain-
tiffs.   On same day, appellants Noyes, Norman & Co. by
leave of court filed their interplea, and alleged that when
the goods were levied upon under the attachment they were
the owners and were in possession of the goods by virtue of
a chattel mortgage given to appellants for $1,575, evidenced
by a promissory note, dated May 21, 1895, and due one day
after date, and signed by W. V. Carey.   The chattel mort-
gage contained power of sale, if note was not paid at matu-
rity, and was signed and executed by W. V. Carey.   On
December 5, 1895, case was transferred by agreement from
Muscogee to Vinita.   On October 9, 1896, Henry Baden and
Mack-Stadler & Co., were allowed to file interpleas.   They
were the same as heretofore set out as the interplea of
Noyes, Norman & Co.,—note to Henry Baden for $1,000, and
note to Mack Stadler & Co. for $526, both dated May 21,
1895, and due one day after date, and secured by chattel
mortgage, with power of sale.   On March 2, 1897, plaintiffs
filed answer to interpleas of Noyes, Norman & Co., Mack
Stadler & Co., and Henry Baden, alleging the chattel mort-
gage was fraudulent and void, for the reason that Carey
executed same with fraudulent intent to hinder and delay

plaintiffs and other creditors, and that the same was well known to interpleaders at the time; that C. E. Brown was agent for interpleaders, and that he fraudulently induced Carey to execute the mortgages, by informing him that he had seen telegram from plaintiffs, instructing their attorneys to attach Carey's stock. Plaintiffs allege the statement to have been false, and that Brown, by persuasion and false promises to Carey, induced him to make the said mortgages to interpleaders, and also mortgage to his partner, R. B. Croam, for $1,300, and that Brown at the time knew that Carey and Croam were partners, and induced Carey to execute same "with the fraudulent intent to hinder, delay, and defeat the creditors of said Carey and Croam in the collection of their debts; * * * that said Brown, as agent for interpleaders, represented, at and before the said pretended mortgages to interpleaders were given, that if said Carey would give the said mortgage herein referred to, and which covered all of said Carey's property, he, said Brown, as agent for said parties, would have the property sold to the wife of said Carey, the mortgagor, thereby preventing the other creditors from having or securing any interest therein, and that she, Emma M. Carey, the wife of said mortgagor, need not pay cash therefor, but could, after said purchase, give to the said fraudulent mortgagees a lien upon said property, and continue to carry on the business of said W. V. Carey in her own name; * * * that in furtherance of the said fraudulent agreement and conspiracy between said Brown, agent, and said W. V. Carey, above set forth, the said mortgagees did have the property sold under said pretended and fraudulent mortgages, to Emma M. Carey, the wife of said W. V. Carey, mortgagor." On the same day the interpleaders filed reply to answer of plaintiffs, denying specifically the allegations of plaintiffs in their answer. The case was tried to a jury, who returned a verdict for plaintiffs. Interpleaders filed motion for new trial, which was over

ruled by the court, whereupon interpleaders appealed to this court.

Dooley & Keith and Soper, Mellette & Smith, for appellants.

A mortgage is not invalidated by the fact that the creditor knows when he takes a mortgage that his debtor is in failing circumstances and that the intended effect of giving the security will be to delay other creditors in collecting debts due to them. Jones on Chattel Mortgages, (4th Ed.) § 356, page 387, 388; Dance vs Seaman, 11 Gratt. 778, 782; Omstead vs Matterson, 45 Mich. 617; Cromelin vs McCauley, 67 Ala. 542.

A mortgage given by an insolvent debtor with intent to prefer a creditor is not invalid unless some statute takes away his right to prefer, although such preference by mortgage may operate to delay and hinder other creditors. Troy vs Smith, 38 Ala. 469; Jones on Chattel Mortgages, § 356; Hempstead vs Johnstone, 18 Ark. 123; Sparks vs Mack, 31 Ark. 666, 672; Welch vs Werschem, 92 Ill. 115; Bently vs Wells, 61 Ill. 59 Am. Rep. 53; Gilbert vs McCorkle, 110 Ind. 215; 11 N. E. Rep. 296; VanPatton vs Burr, 52 Iowa 518; 3 N. W. Rep. 524; White Lead Co. vs Haas, 33 N. W. Rep. 657; Froome vs Jones 13 Iowa, 474; A chattel mortgage given for a bona fide indebtedness is valid, although the mortgage was given by the debtor with intent to defraud his creditors and the creditor preferred, knew of such intent. Eureka Iron & Steel Works vs Bresnahm, et al 33 N. W. 834; First National Bank vs Ridenour, 46 Kas. 707; 27 Pac. 150; Huiskamp vs Moline Wagon Co. 121 U. S. 974; Herktrath vs Stookey, 63 Ill. 486; Hessing vs McClokey, 37 Ill. 351; Wood vs Clark, Ill. 12 N. E. 271; Woonsocket Rub. Co. vs Folley, Fed. 808; Southern Whitelead Co. vs Haas, 33 N. W. 657; 30 Aulman vs Aulman, 32 N. W. 657.

The court erred in giving the following instruction: "You are further instructed that if you believe from all the evidence, that any witness has intentionally testified falsely to any material fact on the trial of this cause, you may disregard his entire testimony, unless the same is corroborated by the testimony of other witnesses." Hale vs Rawallie, 8 Kas. 142; Shellabarger vs Nafus, 16 Kan. 554, 555; Mercer vs Wright, 3 Wis. 567, 568; Knowles vs The People, 15 Mich. 408; Fisher vs The People, 20 Mich. 147; Lewis vs Hodgdon, 17 Maine, 267, 273; Blanchard vs Pratt, 37 Ill. 243, 246; State vs Stout, 31 Mo. 406; Callahan vs Shaw, 24 Iowa 441; Meade vs McGraw, 19 Ohio St. 55, 64.

The mere sharing of profits, although cogent evidence of partnership, does not create one as to third parties. Culley vs Edwards, 44 Ark. 423; Mecham vs Valentine, 29 Fed. 276; Shepard vs Pratt. 16 Kan. 209; Kellogg Newspaper Co. vs Farrell. 88 Mo. 594; Central Savings Bank vs Walker, 66 N. Y. 428; Harvey vs Childs, 28 Ohio St. 319; 22 Am. Rep. 387; Eastman vs. Clark, 53 N. H. 276; Kellogg vs Farrell, 88 Mo. 594. The court erred in refusing the following instruction: "If you believe the defendant W. V. Carey in making the mortgage to interpleaders herein intended to defraud other creditors and that his purpose to so defraud other creditors was known at the time to the mortgagees or their agent, yet if the sole purpose of the mortgage was to secure a valid debt to mortgagees, your verdict should be for the interpleaders." Sexton vs Anderson, 95 Mo. 375; Wood vs Keith, 60 Ark. 425; Holmes vs Braidwood, 82 Mo. 610; Stainbrook vs Duncan, 45 Ill. 344; Knower vs Central Bank, 124 N. Y. 552; Reynolds vs Weinman, 25 S. W. 33; State vs Mason, 112 Mo. 374; First National Bank vs Smith, 93 Ala. 97; Worland vs Kumberlin, 6 B. Mon. 608; Uhler vs Maulfair, 23 Pa. 481; Bank vs Day, 7 Tex. App. 569; Hasie vs Conner, 53 Kan. 713.

*James P. Grove* and *Harrison O. Shepard*, for appellees.

TOWNSEND, J.   The appellants, in the arrangement
of their brief, have not clearly apprehended, or have failed
to fully comply with, the requirements of rule 10 of this
court.   The portion of the rule not complied with is as fol-
lows:   "2.   This brief shall contain, in order here stated.
(1) A concise abstract, or statement of the case, presenting
succinctly the questions involved, in the manner in which
they are raised.   (2) A specification of the errors relied up-
on, in law cases, shall set out separately and particularly
each error asserted and intended to be urged.   *   *   *
When the error alleged is to the charge of the court, the
specification shall set out the part referred to, totidem ver-
bis, whether it be in instructions given or in instructions re-
fused."   "It is generally said that the assignment of errors
in the appellate court is just as essential as the declaration
or complaint in the lower court.   It is jurisdictional, and
cannot be dispensed with by agreement of the parties.   *
*   *   The failure to file an assignment of errors must
consequently entail an affirmance of the judgment or decree
or a dismissal of the appeal."   2 Enc. Pl. & Prac. pp 922-
924.   But the "appellants earnestly contend that the first
instruction given by the court," which is copied, "tended to
mislead the jury" (page 3, appellants' brief); and further on,
on page 5, they "further complain and contend that the
court erred in giving the instruction designated as No. 2,"
which is not copied.   On page 8 they "further contend that
the court erred by giving instruction No. 4," which is
copied; and on page 9 they "insist that the court erred in
giving the following instruction," and then copy part of an
instruction given by the court to the jury, instructing them
that they are the sole judges of the credibility of the wit-
nesses, etc.; and on page 13 they "contend that the court
erred in refusing to give the following instructions, asked

for by the interpleaders," which are copied.   The foregoing
are  found  in  the  original  brief  of  appellants  in  the
supplemental  brief  filed  by  the  appellants  they  say,
"The  attention  of  the  court  is  directed  to  the following
instructions, given by the trial court at the request of the
appellees herein," which are copied, and said to be on page
53 of  transcript,  but  upon  examination  of  transcript  are
found on page 56.   It is a definition of a  partnership  given
by the court, and from the argument made by appellants  in
their brief they evidently intended to assign as error the
giving of said instructions.  They also again copy the fourth
instruction of the court, of which they complained  in  their
original brief, and they also copy on page 8  the  instruction
asked by appellants and refused by the court, which was
copied on page 13 of the  original brief.    Hence, we infer
that the five assignments of error are intended to be  stated
in the original brief, and an additional one in  their supple-
mental brief, making six in all; but none of  them  are  num-
bered, and they are found by an examination of the original
and supplemental briefs of the appellants and the transcript
of the record.   It would materially have lessened the labor
of this court, and would better inform the  opposite  counsel
of the points to be relied upon, had the  rule  of  this  court
been complied with by appellants' counsel.

The appellants have cited numerous authorities to the
effect that the following quotation from Jones on Chattel
Mortgages is good law:   "Any mortgage interposes an  ob-
stacle in the way of the legal  remedies of  other  creditors,
and may to that extent be said to hinder and delay them;
but this fact is not of itself sufficient to render the mortgage
void, in the absence of an intent to so hinder and  delay the
mortgagor's creditors.   Moreover, a mortgage is not invali-
dated by the further fact that the creditor knows, when he
takes a mortgage, that his debtor is in failing circumstances,
and that the intended effect of giving the security will be to

delay other creditors in collecting debts due to them."
Jones, Chat. Mortg. § 356. This will not be disputed, and
it is also well settled that when a party averred, "by way of
avoiding a deed of trust, that it was made to hinder, delay,
and defraud creditors, and was therefore null and void, the

<span style="float:left">Fraud. Burden of proof.</span> onus probandi was upon him," and "that fraud is not to be
presumed, but it must be established by proof." Hempstead
vs Johnston, 18 Ark. 124. "A sale of goods in good faith
to pay a preferred debt, and without any intention to delay
other creditors, is not fraudulent. A debtor may prefer one
creditor to all others." Sparks vs Mack, 31 Ark. 666. A
creditor has a right to collect his debt, and has a right to
have the same secured by chattel mortgage, though the ef-
fect may be known to him to be to hinder and delay other
creditors; and Mr. Jones in the same section (356) says: "A
mortgage given by an insolvent debtor with intent to prefer
a creditor is not invalid, unless some statute takes away his
right to prefer, although such preference by mortgage may
operate to delay and hinder other creditors. If made in
good faith to secure a creditor, and not at all to delay and
hinder other creditors, it is lawful,"—citing a large number
of authorities in support of this proposition. An examina-
tion of the authorities shows that it is established by the
great weight of authority that if the effort of the creditor is
in good faith to collect or secure his debt, and he takes
property at a fair price, he is doing what he has a lawful

<span style="float:left">Reference. Right of creditor to obtain.</span> right to do. and his security is good, notwithstanding it may
hinder and delay other creditors in the collection of their
debts; and if that was all there was in this case, it should
be reversed.

But Mr. Jones says further, in section 356: "If a
mortgage is given by an insolvent debtor, not to protect and
prefer an honest creditor, but rather to aid and assist the
debtor in defeating other creditors by covering up his prop-
erty, it will be held fraudulent." In Shelley vs Boothe, 73

Mo. 74, it is said: "It is no objection to the validity of a conveyance by a debtor to his creditor that it operates to hinder and delay other creditors, that it was made with the intent on the part of the debtor that it should so operate, and that the creditor receiving it was aware of that intent, provided he received it with the honest purpose of securing his debt. But if he acted from a desire to aid the debtor in defeating other creditors, or in covering up his property, or in giving him a secret interest therein, or locking it up in anyway for the debtor's own use and benefit, the conveyance will be held fraudulent and void." Cobbey, Chat. Mortg. § 769, says: "A mortgage executed with the fraudulent intent to delay creditors, and accepted by the mortgagee with a knowledge of such fraudulent intent, he participating therein, is void as against creditors. The rule is well established that where a mortgagee of personal property is conniving with the mortgagor to defraud the latter's creditors, and, in furtherance of the unlawful plan, advances money and takes a mortgage, said mortgagee has no equity, as against such creditors, to be protected for the amount so advanced. A fraudulent intent upon the part of the mortgagor alone to defeat other creditors does not invalidate a mortgage given for a just debt. To avoid such a mortgage, both the mortgagor and mortgagee must participate in the fraudulent intent. If a chattel mortgage is executed, not alone to secure an indebtedness to the mortgagee, but to protect the property of the mortgagor, and to hinder and delay his creditors, and this fact is known at the time by the mortgagee, the mortgage will be void as to the creditors attempted to be defrauded." The answer of appellees alleges that the appellants, through their agent, Brown, did aid the debtor in covering up his property and participated in an effort on the part of the debtor to defeat the other creditors. The allegation is copied in the statement of the

Fraudulent mortgage. When avoided

case, supra, and the same was denied by the appellants in their reply.

The first and second errors assigned are to the charge of the court, designated as "No. 1" and "No. 2," which are as follows: No. 1: "The court further instructs the jury that a debtor has a right to secure his creditors by mortgage, and, although the ultimate effect of this may be to delay other creditors, such mortgage will be valid, if made in good faith, solely for security; but a mortgage which is executed, not alone to secure an honest indebtedness to mortgagees, but also to protect the property of the mortgagor, and to cheat, hinder, or delay his creditors, if this fact is known at the time mortgagees participated therein, is fraudulent as to other creditors and void; and if you so believe, from the evidence in this case, you will find for the plaintiffs and against the interpleaders." No. 2: "If you find, from the evidence in the case, that the mortgagor, W. V. Carey, fraudulently intended, by the giving of the mortgages to Noyes, Norman & Co., Mack Stadler & Co., Henry Baden, Swofford Bros. Dry Goods Co., and Robert R. Croam, to cheat, hinder, or delay his creditors, the court instructs you that knowledge or notice of such fraudulent intent on the part of C. E. Brown, agent for interpleaders herein, was notice to said interpleaders in this case; and it was not necessary that said interpleaders had actual knowledge of such fraudulent intent on the part of said mortgagor, W. V. Carey."

Fraud. Instructions.

The appellant contended that the first instruction of the court "does not state the rule of the law correctly, as applicable to such cases as the one at bar, and that by the wording and provisions of the instruction it is made ambiguous, and a clear understanding of just what rule the court attempted to lay down is impossible to ascertain and determine." We cannot see any serious objection to this instruct-

ion.   He instructs them that a debtor has a right  to  secure
his creditors by mortgage, though it may delay other  cred-
itors; but when it is executed "not alone to secure an honest
indebtedness to mortgagees, but also to protect the  proper-
ty of the mortgagor,  *  *  *  if this fact is known at the  time
the mortgagees participated therein," it is fraudulent.   This
is in harmony with the authorities heretofore  cited,  as  we
understand them.

The appellants are unfortunate in citing  the  case  of
Bank vs Ridenour, 46 Kan. 707, 27 Pac. 150,  in  support  of
the error assigned in giving the second instruction.   In the
Kansas case, the firm of Lovejoy & Glasscock made a  mort-
gage to C. J. Lovejoy, one of the members  of  the  firm,  to
secure a bona fide indebtedness to the bank.   The case  was
tried to the court without a jury, and the court,  in  its  find-
ings of facts, found that said C. J. Lovejoy  was  a  member
of the firm of Lovejoy & Glasscock,  and  liable for  all  the
debts of the firm, and that said  mortgage was  given  to
hinder, delay, and defraud the creditors of Lovejoy & Glass-
cock, which said intent was known to and participated in by
the defendants, C. J. Lovejoy,  H.  C.  Lovejoy,  and  A.  C.
Glasscock, but the bank had no knowledge or notice of such
intent, and did not participate  therein.    The  court  below
held the mortgage void, but the supreme court reversed the
case in a very full and exhaustive opinion, of which the  fol-
lowing is the concluding part:    "Finally,  it  is  contended
that because C. J. Lovejoy was made the nominal mortgagee
in the security claimed by the plaintiff, and  the  trial  court
found  that  the  mortgage was  made by the mortgagors
to hinder and delay their creditors, and that C. J. Lovejoy
participated in the fraudulent intent of the mortgagors,  the
mortgage is necessarily void as a  security  in  favor of the
plaintiff, though the court also found that the plaintiff knew
nothing of such fraudulent intent of the mortgagors.   It is
said that C. J. Lovejoy took nothing under the mortgage be-

cause of the fraudulent intent in which he participated, and that the plaintiff could get no more rights under the mortgage than C. J. Lovejoy got; that whatever rights the plaintiff got under the mortgage came to it from C. J. Lovejoy. If the plaintiff got no more rights under the mortgage than C. J. Lovejoy got, then, indeed, it might as well go out of court; for C. J. Lovejoy got no rights at all under the mortgage, except that of mere nominal mortgagee, or the right of a mere naked trustee. He got no right to any of the security for any purpose. If he had refused to act as trustee of the trust, the plaintiff's rights would not thereby have been affected. Its lien upon the security would have remained the same, and it could have enforced it without his aid. He had no power to affect its rights. He could not have discharged its lien, nor could he have satisfied the mortgage. The plaintiff took nothing by, through, or under him, but had and has its lien upon the security, without regard to him, by the direct act of the mortgagors in setting aside property to secure and pay its debt, and, when once the assignment of the security was made, in spite of him, or any act of his. He did not in any way represent the plaintiff by any act, request or authority from it. Nor does the plaintiff take from him by assignment, or any other act of his, nor by being in law subrogated to any rights of his. The firm of Lovejoy & Glasscock owed the plaintiff a bona fide debt of $10,000. The firm had the right to secure such debt by making the mortgage, and the fact that it used C. J. Lovejoy as a nominal mortgagee in the security it was assigning to the plaintiff could not invalidate the security in the hands of the plaintiff, no matter what its intent was in making the mortgage, nor how much he whom it chose to act as nominal mortgagee knew of its intent. The plaintiff bank knew nothing of any wrongful intent; and it is probably true, under the authorities, that any amount of knowledge of the intent of the mortgagors, on the part of the plaintiff, would not render

the mortgage void in its hands in favor of the liens created after the recording of the mortgage, so long as the debt to secure which it was given was bona fide, and it got by its security no more than the fair value in property of the debt secured. Worland vs Kimberlin, 6 B. Mon. 608, 44 Am. Dec. 785, and cases there cited; Covanhovan vs Hart, 21 Pa. St. 495; Cooper vs Bank, 40 Kan. 5; 18 Pac. 937; Bank vs Ridenour, 46 Kan. 716, 27 Pac. 150. C. J.Lovejoy certainly cannot be compared to C. E. Brown, who, it was admitted, was the agent of the interpleaders in the case at bar, at least for some purposes.

And this brings us to the consideration of the fact that the evidence has not been brought up by the bill of exceptions. Under rule 12 of this court it is provided that if the facts "be disputed, or a defect of proof be the ground of ruling or exception, the evidence shall be set out at length." "Where the evidence is not in the record, the general presumption will save the instructions, if they can be regarded as correct upon any supposable state of facts under the issues." Elliott, App. Proc. § 722, citing a long list of authorities; also, see sections 812, 820, 823. The case at bar furnishes an excellent illustration of the necessity of such a presumption, and of the rule of this court, that the evidence should be set out at length. The appellants in their original brief say, "The capacity, as shown from the record in this case, in which Mr. Brown acted for interpleaders, was that he assisted in drawing up the mortgages, took them, and transmitted them to the respective interpleaders, and was not the regular agent of the interpleaders for the purpose accomplished in that respect." Whereas the appellees in their brief set out the proof as follows: "But in this case the appellees contend, and the proof on the trial of the case showed, that the giving of the mortgages by Carey was not intended for security; on the other hand, the contention of the appellees was and is that Brown, the agent for all the

mortgagees, and Carey, conspired together, and contrived the plan, which was carried out, of executing the mortgages for the twofold purpose:  First, of having the property sold under the mortgages, at a sacrifice, to the wife of Carey, the mortgagor, so that Carey could carry on the business in his wife's name, as the evidence shows was done; and, second, to defraud Tootle, Wheeler & Motter by that means out of their debt, as well as any other creditors who had not employed the man Brown to represent them.  The evidence established this state of facts.  The record says, 'tended' to establish it."  When counsel take such opposite views as to what the evidence on the trial did show, and the evidence has not been brought up in the record, it is a wise rule that sustains the instructions upon the presumption that they were applicable to the evidence.  This court will not reverse for instructions given upon the evidence, "if they can be regarded as correct upon any supposable state of facts under the issues, where the evidence is not in the record."

The third assignment of error is directed to the fourth instruction of the court to the jury, which is as follows: "You are further instructed that if you find, from all the evidence in this case, that said R. B. Croam and W. V. Carey were partners at the time of the execution and delivery of the mortgages from said Carey to interpleaders herein; and to said Croam, said mortgage to said R. B. Croam is fraudulent and void as against the plaintiffs herein; and if you further find, from all the evidence in the case, that C. E. Brown, as agent for the interpleaders herein, had knowledge or notice of such partnership at the time of or prior to the execution and delivery to him of said mortgages to interpleaders herein, and acquiesced therein, the interpleaders cannot recover, and your verdict should be for the plaintiffs."  In regard to his assignment of error, this court is of the opinion that the presumption is in favor of the instruction, because the evidence upon which it is based is not in the

**Instructions. Presumed proper in absence of evidence.**

record. What the evidence as to the partnership between W. V. Carey and R. B. Croam was can only be conjectured, so far as this court is concerned. The appellants in their supplemental brief, say: "The bill of exceptions recites that the evidence on the part of the plaintiffs tended to show that W. V. Carey and R. B. Croam were partners; that the evidence on the part of the interpleaders tended to show that they were not partners. The bill of exceptions negatives the proposition that any other testimony than that shown therein was adduced." That the participation of C. E. Brown in the alleged conspiracy to delay, defeat, and defraud other creditors than interpleaders would bind interpleaders, if he was their agent, and acted in connection with Carey in the scheme to turn the stock over to Carey's wife, and place it beyond the reach of Carey's other creditors cannot be doubted. "Warren vs Warren [46 N. Y. 228] establishes the principle that actual fraudulent intent, sufficient to avoid a transfer, need not be personal to the debtor. * * * This case is a valuable precedent, showing that intent may be established by implication or substitution, and that mental operation or emotion is not necessarily the test." Wait, Fraud. Conv. § 198, and cases cited.

"The appellants, for their fourth assignment of error, objected to the following charge of the court: "You are further instructed that if you believe, from all the evidence, that any witness has intentionally testified falsely to any material fact on the trial of this cause, you may disregard his entire testimony, unless the same is corroborated by the testimony of other witnesses" But it appears, from an examination of the transcript of the record, that the foregoing was only the latter clause of the charge of the court upon the subject, and that the full instruction of the court is as follows: "The court further instructs the jury that you are the sole judges of the credibility of the witnesses, and the weight to be given to their testimony, and that, in determin-

ing the weight to be given to the testimony of the witnesses, you may take into consideration their appearance while on the stand, their manner of testifying, and their interest in the result of the litigation. You are further instructed that if you believe, from all the evidence, that any witness has intentionally testified falsely to any material fact on the trial of this cause, you may disregard his entire testimony, unless the same is corroborated by the testimony of other witnesses." Appellants refer to Hale vs Rawallie, 8 Kan. 142, 143; and quote the remarks of Judge Brewer, that, "only that witness is wholly to be disbelieved who has knowingly and willfully testified to a falsehood." It occurs to us that a witness who has "intentionally testified falsely" has done so both "knowingly" and "willfully"; but, taking the whole instruction together, we do not think that the jury could have been misled. Perhaps it might have been more explicit had the court added to the instruction complained of, the words, "or the facts and circumstances of the case:" Sack. Instruct. Juries, p. 36 § 9; Rice, Ev. 793; Starkie, Ev. § 873.

*Witness testifying falsely. Instruction.*

The fifth assignment of error was the refusal of the court to give the following instruction: "If you believe the defendant, W. V. Carey, in making the mortgage to the interpleaders herein, intended to defraud other creditors, and that his purpose to so defraud other creditors was known at the time to the mortgagees, or their agent yet, if the sole purpose of the mortgage was to secure a valid debt to the mortgagees, your verdict should be for the interpleaders." The court, in his instructions, has substantially given the foregoing instruction. While not in the language used by appellants, yet the court in his instructions tells the jury that they must find that the agent must have known and participated in the fraud, or, knowing that Carey and Croam were partners, that if Brown acquiesced in said mortgage by Carey to Croam, at the time of execution of mortgages to interplead-

ers, the same was fraudulent; and the court might have added, "being all one transaction," but the jury could infer that from the language of the instruction, and probably the instruction would bear no other meaning. The court tells the jury that "fraud will not be inferred from an act which does not necessarily impart it. It is never presumed, and circumstances of mere suspicion leading to no certain result are not sufficient proof of it." The court further instructed the jury as follows: "The court further instructs the jury that if you believe the mortgagor executed the mortgages to interpleaders with fraudulent intent to cheat, hinder, or delay other creditors in the collection of their claims, and the evidence does not show that the interpleaders knew of and aided the mortgagor in the fraudulent design, you will find for the interpleaders. Intent to defraud must exist at the time of the execution of mortgage, and be participated in by the mortgagee, to be sufficient for setting aside the mortgage. No matter how fraudulent the intention of the mortgagor, if the mortgagee's claim was just, and he did not participate in the fraud, he cannot be prejudiced because of the illegal act of the mortgagor." We are of the opinion, from the instructions of the court, that the jury were fully advised that they must find, from the evidence, that the interpleaders, through their agent, must have participated, acquiesced, or aided the mortgagor in his fraudulent purpose to cheat, hinder, delay, and defraud his other creditors, and that appellants cannot justly complain.

The sixth error to which our attention is called is the giving of the following instruction, and it is set forth in the supplemental brief of appellants. It is as follows: "The court further instructs you that a partnership is an association of two or more persons in some enterprise or business in which the various partners in the business share in the

(11)

profits and losses to some degree; and such partnership, when formed, may adopt and use any style or firm name which they may choose; and the name under which the business is or may be conducted is not a test of the existence of a partnership." The appellants have cited a large number of cases where participation in the profits does not constitute partnership, but those cases are not applicable, because the court, in his instruction, is speaking of a state of facts where not only profits, but losses, are shared; and while as between themselves, the intent of the partners in their partnership agreement undoubtedly prevails, yet the sharing of profits and losses is a rule that is pronounced to be good by the leading writers. 1 Lindl. Partn. pp. 9, 10; Pars. Partn. (4th Ed. ) § 65; 1 Colly. Partn. § 45. We are of the opinion that appellants have had a fair presentation of their case, and that the judgment of the court below in overruling the motion for a new trial was correct, and is therefore affirmed.

CLAYTON, J., concurs.

*Partnership. Test. Name.* (margin note)