## DAUGHERTY, ET AL. VS BOGY.

Opinion delivered October 26, 1899.

*1. Fraud—Fraudulent Conveyances—Creditor's Suit.*

In December, 1893, plaintiff recovered judgment against an indian citizen for a large sum of money; execution was issued and returned nulla bona; plaintiff then instituted proceedings in equity under Mansf. Dig. Sec. 3084 (Ind. Ter. Stat, Sec. 2199) against the indian and a co-defendant, Daugherty, a white man, for a discovery of assets and for the garnishment of credits which could not be reached under execution at law. The master's findings show that the white defendant held a chattel mortgage for $20,000 on all the indian's personal property and improvements, to secure an alleged indebtedness from his co-defendant, the indian citizen, and this mortgage was successively renewed for several years. During the same period, Daugherty, the white defendant, leased extensive tracts of land in the indian country from his co-defendant for an annual rental of $14,500, (said lease not being shown to have been in writing), and at the time this action was commenced the last year's rental was unpaid, but, by agreement was to be credited on the $20,000. mortgage indebtedness. Daugherty

claimed that "part of the inducement for said mortgage was that he should advance moneys to the indian which should afterwards be due as rent". The white defendant made such advances amounting to about $27,000. and did this while his co-defendant, the indian, was still indebted to him to the extent of the $20,000. mortgage, because his co-defendant told him, before this debt became due, the first year, that it would be impossible to allow him to apply the rent on the debt for his creditors were pressing him and he must make some payments to them; that for each of three years the white defendant advanced moneys, forebore to collect the $20.000. by applying the rent on same, and renewed the mortgage regularly· The agreed rental for the lands was inadequate and permitted Daugherty to make an annual profit of $10,000. *Held*, that the execution of the mortgage and the contract with reference to the pasture lease, and the advances of rent money were one and the same transaction; and, *Held*, that said transactions were fraudulent in fact, for the effect was to hinder, delay and defraud plaintiff, one of defendant's creditors, and the law imputes thereto a fraudulent purpose. *Held*, also, that the co-defendant Daugherty participated in the fraudulent transaction and fraudulent purpose.

2. *Execution—Lease—Improvements on Indian Lands.*

Under Act of Cong. May, 2, 1890, improvements on the public domain, owned by indians, cannot be subject to attachment, execution or receiverships, except to satisfy judgments against adopted citizens or persons residing in the indian country and not citizens thereof; but this applies only to such improvements on lands, and under Mansf. Dig. Sec. 3002 (Ind. Ter. Stat. Sec. 2117) providing that every unexpired lease of land shall be subject to execution and sale, and Sec. 3374 (Ind. Ter. Stat. Sec. 2308) making all conveyances or assignments in fraud of creditors, void, the lease of the indian defendant could be seized and put in the hands of a receiver to satisfy plaintiff's claim, as could other personal property, not improvements on indian land.

3. *Conversion—Equitable Garnishee—Liable to Creditors.*

Where there is a fraudulent conversion of assets in which an equitable garnishee participates, he becomes liable for the full value of the assets, passing through his hands, to the attaching

creditors, although there is an honest subsisting indebtedness from his co-participant in the fraudulent transaction.

*4. Master's Report—Exceptions—How and When Taken.*

Under Mansf. Dig. Sec. 5271 (Ind. Ter. Stat. Sec. 3476) providing the time and manner of filing exceptions to the report of a master in chancery, it is not required that the errors, excepted to, shall have been first pointed out to the master so he could correct same before making his report.

*5. Appeal—Equity Cases—Trial De Novo.*

In an equity case, on appeal, there is a trial de novo on questions of both law and fact; the court sifting the whole evidence and determining what the correct finding should have been.

*6. Judgment—Rental Money Subjected to Satisfaction.*

Where rent is advanced by a lessee before it is due and while the lessor is still indebted to him, for which he holds other security, and an agreement is made that one years rent which is unpaid, shall, when due, be applied in payment of said other indebtedness, and a summons is served on the parties in a suit in equity for the subjection of lessor's property and assets to the payment of a judgment subsisting against him, and said lease is held to be in fraud of defendant's creditors, and the date of agreement is not shown to have been prior to the date of the service of the summons in equity, under Mansf. Dig. Sec. 3087 (Ind. Ter. Stat. Sec. 2202) the unpaid rent for said year will be seized and held subjected to the payment of the said judgment.

Appeal from the United States Court for the Northern District.

W. M. SPRINGER, Judge.

Action by Alexander M. Bogy against J. M. Daugherty and others. Judgment for plaintiff. Defendants appeal. Modified and affirmed.

On March 19, 1897, the plaintiff below (appellee here)

filed his complaint in equity against the defendants below (appellants here), and alleged that on the 4th day of December, 1893, he recovered a judgment against the defendants L. C. and George B. Perryman for $6,127, with interest at 10 per cent. per annum until paid; that execution had been issued and returned nulla bona; that the judgment debtors have from time to time, and have now, large numbers of cattle and horses in their possession, which nominally belong to them, but upon which they execute mortgages upon their arrival in the territory, and plaintiff is unable, under the law, to levy upon the equity of redemption; that the judgment debtors are the owners or possessors of a large tract of pasture lands, from which they derive a large revenue; which plaintiff believes and alleges amounts to $20,000 per annum, and that they have received that amount annually for many years; that the defendant J. M. Daugherty is the agent or lessee of said judgment debtors, by and through whom they collect said $20,000 per year, and appropriate the same to their own use, in utter disregard of plaintiff's right to have satisfaction of his judgment; that plaintiff believes and alleges that defendant Daugherty is indebted to judgment debtors in a large sum of money, growing out of his relations to the judgment debtors, and their ownership of said pasture.    Plaintiff prays for discovery of the property of the judgment debtors, legal and equitable, and that defendant Daugherty be required to answer what he owes the judgment debtors, what money he holds that the judgment debtors have an interest in, and his relations to them with reference to the lease or holding of said pasture, and what is paid for the use of same; and prays for appointment of a receiver by the court.    On May 7, 1897, defendants filed demurrer.    On May 21, 1897, defendants L. C. and Geo. B. Perryman filed their answer, and alleged that they are citizens by blood of the Creek Nation, and deny specifically each and every allegation of plaintiff's complaint.    On May 29, 1897, case referred to master in chancery to take evi-

dence and make a report, and on same day a receiver was appointed. On November 5, 1897, defendant Daugherty filed his separate answer, and denies that he is agent of judgment debtors, denies that through him the judgment debtors collect money from any person for use of pasture lands, and denies he is indebted to judgment debtors, and alleges that he has a contract with George B. Perryman under which he uses, for grazing and other purposes, a certain pasture, for which he pays $14,500 per year; that under the contract he became liable to pay that absolutely and unconditionally; that he had paid prior to the bringing of this action the rent for present year, and the contract expires one year after the present season; that in the year 18— defendant George B. Perryman was indebted to him in the sum of $20,000, and, to secure payment of same. Perryman executed to him a chattel mortgage; that said indebtedness is unpaid, except the interest; "that it was a part of the inducement entering into the contract by which the said Perryman executed to the said J. M. Daugherty the said mortgage that the said J. M. Daugherty should advance to the said George B. Perryman money which would be due to the said Perryman as rent for said pasture, and that the said J. M. Daugherty did advance money in this wise, almost all of which was paid by the said J. M. Daugherty to the various creditors of the said George B. Perryman, and this plaintiff among others; that he the said J. M. Daugherty is to apply the amount of the rent upon the said pasture for the ensuing year upon the $20,000 indebtedness which the said Perryman owes to him; that the property mortgaged by Geo. B. Perryman to him, the said J. M. Daugherty, is insufficient to pay the said indebtedness, or any considerable portion thereof; that the said defendant J. M. Daugherty holds no property in which L. C. and George B. Perryman have any interest, except as above shown; that he is not indebted to either the said L. C. or Geo. B. Perryman in any sum whatever, but that the

said George B. Perryman is, and was at the time of the institution of this suit, indebted to him, the said J. M. Daugherty, in the sum of $20,000, as before stated." On December 14, 1897, plaintiff, by leave of court, amends his complaint, and charges "that the said J. M. Daugherty has conspired and is conspiring with his said co-defendants, with intent to cheat, hinder and delay the creditors of the said Perrymans, and especially the plaintiff, and as a part of said scheme he has had executed to him mortgages or bills of sale upon all the property of the said Perrymans, including farms, pastures, and all personal goods belonging to them, and they have executed the pretended or fraudulent lien upon the large pasture aforesaid, and the said Daugherty has during the past three or four years paid to the said co-defendants the sum of more than fifty thousand dollars, while the creditors of the said co-defendants of said Daugherty were hindered, delayed, and prevented by said fraudulent devices from the collection of the just debts due them." The master's report was filed December 23, 1897, and exceptions thereto filed by defendants George B. Perryman and J. M. Daugherty. The master reports, among other things, that the rent for the pasture for 1898 had not been paid, and recommended that the receiver be continued, and that he collect that rent from defendant Daugherty, and pay plaintiff's judgment out of the same, and costs, and surplus to defendant George B. Perryman. Plaintiff also excepted to some of the findings of the master. On February 1, 1898, the court confirmed master's report as follows: "The court, having thus passed upon each of the exceptions to the master's report, is of the opinion that the master's report should be confirmed in all respects, except as herein otherwise stated, and that the prayer of the plaintiff in this case should be granted. It is therefore ordered, adjudged, and decreed by the court that the plaintiff in this case is entitled to receive from the receiver heretofore appointed in this case an

amount of money sufficient to pay off his judgment heretofore obtained, and interest thereon, according to its tenor and effect, and that he have judgment against the defendant for the cost of this action. The receiver appointed in this case is ordered and directed by the court to take charge immediately of all the property covered by the mortgage in question, and to apply the proceeds of the leases on the pastures mentioned in the complaint to the payment of the judgment of the plaintiff according to its tenor and effect, and the cost of this action, and that he pay the same out of the first money received by him as such receiver." Defendants excepted to the findings of law and fact, and to the decree of the court, and appealed to this court.

*P. L. Soper, W. M. Mellette,* and *Edgar Smith,* for appellants.

*Geo. E. Nelson,* for appellee.

TOWNSEND, J. This was a bill in equity filed by the appellee (plaintiff below) against the appellants (defendants below), under section 3084, Mansf. Dig. (section 2199, Ind. T. Ann. St. 1899), for discovery of assets and for the garnishment of credits which could not be reached under execution at law. Said section is as follows: "After an execution of fieri facias, directed to the county in which the judgment was rendered, or to the county of the defendant's residence, is returned by the proper officer, either as to the whole or part thereof, in substance, no property found to satisfy the same, the plaintiff in the execution may institute an action, by equitable proceedings, in the court from which the execution issued, or in the court of any county in which the defendant resides or is summoned, for the discovery of any money, chose in action, equitable or legal interest, and all other property to which the defendant is entitled, and

for subjecting the same to the satisfaction of the judgment; and in such actions, persons indebted to the defendant in the execution, or holding the money or property in which he has an interest, or holding the evidence or securities for the same, may also be made defendants." After the bill and the answer of the judgment debtors were filed, the court, upon application of the appellee, appointed a receiver "to take charge of all the property, legal and equitable, of the said Perrymans," who were the judgment debtors, and the case was referred to the master to take testimony and report. The master took the testimony of G. B. Perryman, one of the judgment debtors, and J. M. Daugherty, one of the defendants, and made a report of his findings to the court, which report is as follows:

"(1) That this cause was instituted on the 19th day of March, 1897, at which time the complaint was filed, and that the defendants have filed their answers herein. That I have taken testimony covering the whole matter involved herein, including the accounts between the defendants G. B. Perryman and J. M. Daugherty. That the facts disclosed by the pleadings and proof herein show that the plaintiff is a citizen of the United States, and that defendants G. B. and L. C. Perryman are citizens of the Creek Nation by blood, and the defendant J. M. Daugherty is a citizen of the United States. That the proof fails to show that the defendant L. C. Perryman has any interest in the property herein which the plaintiff seeks to subject to his debt. That on the 4th day of December, 1893, the plaintiff herein recovered in this court a judgment against the defendants G. B. and L. C. Perryman for the sum of $6,177.26,—said judgment to bear interest at the rate, of ten per cent. per annum from that date until paid,—and for the costs of the cause. That the said judgment remains unpaid, and that there has been an execution issued thereon, and returned by the marshal of this court 'No property found.' (2) That the defendant

George B. Perryman is shown to be the owner of a large number of dwelling and store houses in the town of Tulsa, Creek Nation, Indian Territory, which are of great value, and from which large amounts in rent are collected, and that in addition that he is the owner of four large farms or improvements in the Creek Nation lying near Tulsa, and on the Arkansas river, south of that place, and one south of Catoosa, and embracing at least 3,000 acres of improved land, from which large crops are obtained. That he has also about seven hundred and fifty head of horses, which are worth from ten to fifteen dollars per head and that he has leased from the Creek Nation large pastures, embracing over 68,000 acres of land, which pastures are leased by him to the defendant J. M. Daugherty. That under the border pasture law the said Perryman has the said pastures from the nation for the year 1898, at the end of which season his lease will expire, and that he has to pay to the Creek Nation 5 cents per acre as rent for the said pastures. That he has rented his pastures to J. M. Daugherty, the defendant, since the year 1891, though the lease did not include all of the pastures until the year 1895. That the proof shows that in the year 1891 J. M. Daugherty paid to G. B. Perryman, as rent for said pasture,, the sum of $10,000, in 1892, $10,000; in 1893, $10,000; in 1894, $12,650; and in 1895, 1896, and 1897, $14,-500 each year; making a total of $96,150, so paid by Daugherty to Perryman in the past seven years. That in the testimony it is stated that under the contract existing between the said parties, and which has been in force ever since the beginning of the year 1895, at which time all the pastures came into the hands of Daugherty, Daugherty is to pay to George B. Perryman the sum of $14,500 each year, 'absolutely,' and without regard to any indebtedness that may exist between the said parties outside of the pasture contract. No copy of the said contract has been exhibited

to me, and the evidence is not clear as to the existence of any written contract. (3) That in February 1894, George B. Perryman had become indebted to J. M. Daugherty in the sum of $20,000 for borrowed money advanced by Daugherty to pay certain debts of Perryman, and on the 15th day of February, 1894, said Perryman gave to said Daugherty a mortgage to secure the said $20,000, which mortgage was upon a large quantity of property owned by Perryman in the Creek Nation, a certified copy of which mortgage is attached to the testimony herein marked 'Exhibit C.' That later, on the 24th day of January, 1896, the said mortgage was renewed by giving another mortgage, which secured the said amount and covered a large quantity of property not included in the first mortgage, and which in fact seems to be a blanket mortgage upon all the property of George B. Perryman. A certified copy of the said mortgage is attached to the testimony herein, and marked 'Exhibit D.' That the testimony shows that none of the principal of the said indebtedness of $20,000 has been paid and that the payments made thereupon by Perryman from the rents of the said property and the sale of some of it have not more than paid the interest on the debt. (4) That during the whole of the time that this indebtedness has existed the said Daugherty has paid to Perryman $86,150 as the rent of the said pasture, and, has not applied any portion of the same to the payment of his said indebtedness of $20,000. (5) That the plaintiff charges that the said Daugherty has conspired with Perryman to cover up all of Perryman's property so that it could not be reached by any of his creditors, and, while having in his hands large sums of money due the said Perryman, has neglected to pay his own debt, as is required of him by law. That the proof shows that Daugherty has charged up to Perryman the royalty due the Creek Nation for the whole year ending March 31, 1898, upon the said pasture, though two quarters of the same are not yet due. (6) That I am of

the opinion that the proof is not sufficient to show that there has been any actual fraud or conspiracy between Daugherty and Perryman in the matter of the covering up of all of Perryman's property by the said mortgages, but I am of the opinion that Daugherty has placed himseld in a position in which by law he has been saddled with the duty to pay his own debt due from Perryman out of the large sums which have passed through his hands before turning over the said sums to Perryman to be squandered by him as seems to have been done during the past seven years. (7) That the proof shows that J. M. Daugherty has derived a net profit of not less than ten thousand dollars each year from the said pastures, and that he has kept several thousand head of cattle therein. It also shows that the said pastures should rent for more than Perryman has received from them, but that he could not get any one to handle them and advance to him as has been done by Daugherty, on account of his involved condition. (8) That I am of the opinion that the property cannot be held by the court under the act of 1890, as Perryman is a Creek citizen by blood, and, if it is held at all under the receiver, it must be done under the general provisions of the law to protect the property from waste. That the proof shows that Daugherty has contracted for the pasture for the year 1898, and has paid nothing upon the rents for said year. The premises considered, I am of the opinion that the indications are that the rent from said pastures will not be applied to the payment of the debts due by Perryman, unless the collection of the same is directed in some way by the court, and that, if this action is considered by the court in the nature of an equitable garnishment, the rents from the pastures for the year 1898 should be held for the payment of the judgment of the plaintiff herein, returning the surplus to Perryman. I recommend that the receiver appointed by the court heretofore be continued, and that the defendant J. M. Daugherty

be ordered by the court to pay into the hands of the said receiver the rents from the said pastures for the year 1898, and that so much thereof as may be necessary be appropriated by the court to the payment of the judgment of the plaintiff herein and the costs of this cause, and the surplus, if any, be returned to the said G. B. Perryman.''

To the report of the master the appellant J. M. Daugherty filed eight exceptions, which are as follows: "(1) Said defendant excepts to the finding of the master that 'Daugherty has placed himself in a position in which by law he has been saddled with the duty to pay his own debt due from Perryman out of the large sums which have passed through his hands, before turning over the said sums to Perryman,' and, further, to the finding that the said sums were 'turned over by the said Daugherty to the said Perryman to be squandered by said Perryman,' for the reason that, as shown by the master's report, the judgment against L. C. and G. B. Perryman in favor of A. M. Bogy was rendered December, 1893, some years subsequent to the beginning of the business relations existing between said J. M. Daugherty and said G. B. Perryman, and that the same remedy which was sought by said plaintiff on the 19th day of March, 1897, was at the command of said plaintiff from December, 1893, to the said 19th day of March, 1897, and that he has no right to complain of the dealings between these two defendants aforesaid prior to the institution of of this suit on the 19th day of March. The opinion of the master that Daugherty has so placed himself as to be, saddled, with the duty to pay his own debt due from Perryman is based on no rule of law or equity. That there is no evidence to show that said Daugherty turned over the amounts mentioned by the master to be squandered by Perryman, but that, on the contrary, the evidence shows that almost the entire amount of money paid by said J. M. Daugherty for the use of said pastures was paid by the said Daugh-

erty to the creditors of the said Perryman, and the evidence taken by the master contains, item by item, the payments so made by the said J. M. Daugherty, and shows to whom, when, and the amounts and that in one year the said J. M. Daugherty paid in manner here stated debts of the said Perryman to the amount of about $24,000, and further shows that said plaintiff is numbered among the creditors who have received payments from the said J. M. Daugherty on account of indebtedness owed to said plaintiff by said Perryman. In view of the evidence before the master, it is incomprehensible to said defendant that it would be reported said sums were paid to Perryman 'to be squandered by him as seems to have been done for the past seven years.' (2) Said defendant excepts to the finding of the master to the effect that the mortgage executed by G. B. Perryman to J. M. Daugherty on the 24th day of January, 1896, was a blanket mortgage, and for reason for such exception, states that the evidence in the case, and the only evidence there is in the case upon that point shows that said mortgage was given to secure a bona fide indebtedness from said Perryman to said Daugherty for $20,000, existing at that time, the master himself finding in the same paragraph that the mortgage given in February, 1894, from said Perryman to said Daugherty for said $20,000, was 'for borrowed money, and for money advanced by Daugherty to pay certain debts of Perryman,' and the evidence shows conclusively that the mortgage of 1896 was given to secure the same indebtedness, nothing more than the interest having been paid from 1894 to 1896, and that the whole property mortgaged in 1896 was insufficient to secure said indebtedness of $20,000; and in this connection the defendant further excepts to the finding of the master to the effect that the improvements of the said G. B. Perryman, consisting of dwelling houses and stores, are of 'great' value, and that 'large' amounts of rents are collected therefrom, for the reason that the evidence

(15)

shows that neither rents nor crops are large. $2,000 (two thousand dollars) is the value of stores, and the amount of crops is not stated in evidence; yet the master finds that the stores are of great value, and that 'large' amounts of rents are collected. Defendant excepts to the findings of the said master that he has at any time paid to the said G. B. Perryman $14,500 per year for the use of the pastures, for the reason that the testimony conclusively shows that under the agreement of the said defendant and the said Perryman the royalties of the Creek Nation, amounting to $35 per year, have always been deducted from said amount and paid by said Daugherty to said Creek Nation; and, further to the finding that there are 750 ponies, when the testimony shows '300 to 500'; and, further, to the finding of 3,000 acres of improved land, because the evidence does not show it. (3) Said defendant further excepts to the finding of the master that in the testimony it is stated that under the contract existing between said parties, and which has been in force ever since the beginning of the year 1895, at which time all of the pastures came into the hands of Daugherty, he is to pay to Perryman the sum of $14,500 each, and without regard to any indebtedness that now exists between the said parties outside of the pasture contract, for the reason that the testimony, which was without contradiction, shows that Daugherty was to pay the amount, less the royalty, absolutely and in any event, and it should have been so found as a fact, and not as 'it is stated in the evidence." (4) Said defendant excepts to the recommendation of the master that out of rents of pasture of 1898 the judgment for plaintiff herein should be paid, for the reason that the evidence shows that said J. M. Daugherty is entitled to apply the amount which will be due upon the said pastures for the season of 1898 to the indebtedness due from said Perryman to said Daugherty. (5) The defendant excepts to the finding of the master that, if a receiver be had in this mat-

ter at all, it 'must be, under provision of the law, to pro-
tect property from waste,' and to the recommendation that
receiver be continued   Under the act of congress of 1890,
the property of a citizen of the Indian Territory by blood
cannot be subjected in an original proceeding against him by
way of a receivership.   The act means what it says, and
limits the right of the court to appoint a receiver to the
terms of the act,— and upon the further ground that re-
ceiver should not be appointed against the legal title. (6)
Defendant excepts to the finding of the master as to amount
stated by master as having been paid by Daugherty to
Perryman, for the reason that the amount is more than the
evidence shows was so paid, and for the further reason that al-
most all of the said amount was paid by Daugherty to the
creditors of the said Perryman direct, and should have been
so stated. (7) Defendant excepts to the finding of the
master relative to the value of the property mortgaged by said
Daugherty, for the reason that the master indicates that the
property was of great value, when the value as shown by
the evidence should have been stated. (8) Defendant ex-
cepts to the failure of said report to recommend the abso-
lute discharge of the defendant J. M. Daugherty.''

The appellant Perryman filed three exceptions, which
are as follows: ''(1) Because the master fails to find that
the transactions between J. M. Daugherty and George B.
Perryman were fraudulent in fact; (2) because he finds
that the alleged debts of $20,000 ever existed in fact; (3)
because he fails to find that J. M. Daugherty is indebted at
this time in sums now due to the said Geo. B Perryman.''

The court, in rendering a final judgment in the case,
passed upon the foregoing exceptions as follows: ''The
master sets forth the facts, which I need not refer to at
length, which have already been read. Mr. Nelson, in be-
half of the plaintiff, Bogy, excepts to this report on the

grounds: 'First, because the master fails to find that the transactions between J. M. Daugherty and George B. Perryman were fraudulent in fact. 'The court will pass upon these exceptions as it goes along     The court is of the opinion that the master, under this testimony, should have found that these transactions were fraudulent in fact, and therefore sustains this exception. To which ruling of the court in so sustaining the exception of plaintiff to the master's report the defendant J. M. Daugherty, by his attorney, then and there duly excepted.     'Second, because he finds that the alleged debt of $20,000 ever existed in fact.' The court overrules this exception for the reason that the master finds that there was an indebtedness, and. that fact is established by a preponderance of the testimony, it seems.     The third objection filed by the plaintiff is because he fails to find that J. M. Daugherty is indebted at this time in sums now due to the said George B. Perryman.     If it is understood by this exception that the master should have found that Daugherty had received a sufficient sum of money from the leases with which to pay himself the $20,000 which he had advanced, and that the balance should .have been applied upon the plaintiff's demand  in this case,  the exception would be well taken.     The court is of the opinion that under this exception he has received an amount which would be sufficient to pay him for what he had advanced for the basis of the mortgage, and the court may require him to account for any balance to the plaintiff in this case. The court will now refer to the exceptions in the master's report filed by the defendants.     These seem to be quite lengthy, and they have not been read in the argument.     I presume that I have probably passed upon the substance of most of them, but I will refer to them and see.     The first exception is in behalf of defendant Daugherty and is as follows: [The court below here copies the first exception of defendant to master's report, supra.] This exception is

stated more as an argument than a statement of law. The court is of the opinion that the exception is not well taken, and should be overruled. The statement in the exception that he had paid about $24,000 to creditors of Perryman is a statement, of itself, which shows that he was guilty of a fraud in law upon the creditors of Perryman; that he had no right, under his mortgage, to secure him in the $20,000 and to collect the money from the property of Perryman and apply it to the payment of Perryman's debts. That is, as against this creditor, a fraud, as it operates to delay him in the collecting of his debts or claim. The second exception is as follows: [I will not read it at length. It will be found in the record.] The exception is overruled, for the reason, among others, that, whether it was a blanket mortgage or not, it was a mortgage to secure Daugherty in a sum that he had loaned, and, if it was used by him for any other purpose, it was used by him for the purpose of delaying creditors other than those Daugherty might select; that he had no right to take a blanket mortgage upon the property of Perryman, and pay such indebtedness as Perryman told him to, and hold off other creditors, and expect that a court of competent jurisdiction would sustain him in thus administering the affairs of this insolvent. The third exception is as follows: [It will be found in the record.] The court is inclined to think that this exception is well taken; that the royalty was to have been paid to the Creek Nation, and whatever Daugherty paid as royalty to the Creek Nation should not be regarded as payment upon his mortgage. The exception is sustained. The fourth exception is as follows: 'Said defendant excepts to the recommendation of the master that out of rents of pasture of 1898 the judgment for plaintiff herein should be paid, for the reason that the evidence shows that said J. M. Daugherty is entitled to apply the amount which will be due upon the said pastures for the season of 1898 to the indebtedness due

from said Perryman to said Daugherty.' The court over-
rules this exception, and sustains the report of the master
to this effect, as stated in this exception, and sustains the
master's report in making this recommendation. The fifth
exception the court overrules, and sustains the report of
the master that the receiver should be continued until
money sufficient to pay this claim to Bogy, the plaintiff in
this suit, is paid. The sixth exception is as follows: 'De-
fendant excepts to the finding of the master as to the
amount stated by [him] as having been paid by Daugherty
to Perryman, for the reason that the amount is more than
the evidence shows was so paid, and for the further reason
that almost all of said amount was paid by Daugherty to
the creditors of the said Perryman direct, and should have
been so stated.' Perhaps this exception is well taken.
The court has not examined carefully the items himself, but
the master has probably done so. In order to have made
this exception good, the defendant should have pointed out
the error the master made, in order that he could have cor-
rected it. Not having done this, the exception is overruled.
The seventh and eighth exceptions are overruled. The
seventh is overruled for the reason that the property was
of sufficient value to pay this indebtedness. The eighth is
overruled for the reason already stated.''

To the judgment of the court, appellants have filed
16 specifications of error, but discuss the errors relied upon
under six different heads. The first proposition asserted by
appellants is that there was no proof of fraud, and that the
court erred in sustaining the first exception of appellee to
the report of the master. The appellants insist that the
taking of the mortgage and the dealing with reference to
the pasture are separate transactions, and, the master hav-
ing found that the debt secured by the mortgage is bona
fide, that therefore there is no room to infer fraud, and very
correctly assert the rule that the mortgagor must have had

a design to defraud his creditors, and the mortgagee participated with intent to assist in its accomplishment. No authorities are necessary to establish the latter proposition. Appellants argue that because the mortgagor paid to different creditors moneys out of the large amounts received from the mortgagee, that fact indicates an honesty of purpose, and further, that the mortgagee had a right to secure his debt, and quote an excellent authority as follows: "It must appear that the creditor in some way participated in the fraud, and that there was a purpose beyond the mere effort to collect his debt,—to aid the debtor in defeating, delaying, or defrauding his creditors." Holmes vs Braidwood, 82 Mo. 610. They therefore object to action of the court in sustaining this exception to the finding of the master. They also cite authority to the effect that fraud is not presumed, but must be proven, and close their argument on this proposition with the following: "We most respectfully ask that this court try this case upon the whole record, for in it there is an entire absence of evidence conducing in any degree to satisfy the mind of fraud." In pursuance of this request, we will examine the answer and testimony of the mortgagee, Daugherty. In his answer he says. "In the year 18—, the said defendant Geo. B. Perryman was indebted to him in the sum of $20,000, to secure the payment of which Perryman executed to him a chattel mortgage; that said indebtedness secured by said mortgage remains wholly unpaid, with the exception of a few payments which would probably cover the interest upon the indebtedness; that it was a part of the inducement entering into the contract by which the said Perryman executed to the said J. M. Daugherty, the said mortgage that the said J. M. Daugherty should advance to the said Geo. B. Perryman money which would be due to the said Geo. B. Perryman as rent for said pasture; and that the said J. M. Daugherty did advance money in this wise,

almost all of which was paid by the said J. M. Daugherty to the various creditors of the said Geo. B. Perryman, and this plaintiff among others." The first mortgage was executed February 15, 1894, and a renewal of the same was executed January 24, 1896. It appears from Daugherty's testimony that he advanced to George B. Perryman, the mortgagor, for rents of pasture in 1894, about $27,770.84; and Mr. Daugherty testified further as follows: "Q. Mr. Daugherty, why did you pay on Perryman's account money for the pasture when he owed you this note for $20,000? Ans. Mr. Perryman told me that it would be impossible for him to allow me to apply the proceeds of the rent on the pasture on that note; that he was owing a great many parties, and they were crowding him, and he would be compelled to have the proceeds for the year 1894 to apply on his debts. Q. When did he tell you that? Ans. In the early part of 1894, before the note was due; and I told Mr. Perryman that I would carry it for him for a year, but that he must secure me, and he told me that, if I would do it, that he would give me a mortgage on his property, which he did, and executed his note at the same time that he gave the mortgage. * * * Q. Is it not a fact that you got very much more for the use of the pasture than you paid Geo. Perryman? Ans. I don't think that I did. I mean, not to me as profit. Q. What profit did you make, if you know? Ans. It is very hard for me to say just what I have made. It would average during the time I have had these pastures during the years 1894, 1895, 1896 and 1897 about in the neighborhood of ten thousand dollars per annum. * * * Q. Well, what about the proceeds of the pasture after 1894? In other words, why did you advance him money after you had advanced a sufficient amount to pay the rent of 1894? Ans. I did it upon the same promises I had in 1894. * * * Q. Then what was the note executed in 1896 for? Ans. It was a renewal of the first note. At the time it was renewed the under-

standing between I and Mr. Perryman that I was to carry it twelve months longer." Now, it is evident from the foregoing swer and testimony of the mortgagee that instead of the mortgage and contract with reference to the pasture being separate transactions, they were one and the same transaction, as Daugherty says in his answer "that it was a part of the inducement entering into the contract by which the said Perryman executed to the said J. M. Daugherty the said mortgage that the said J. M. Daugherty should advance to the said Geo. B. Perryman money which would be due to the said Geo. B. Perryman as rent for said pasture." And Mr. Daugherty in his testimony says, "Mr. Perryman told me * * * that he was owing a great many parties, and they were crowding him, and he would be compelled to have the proceeds for the year 1894 to apply on his debts," and that he told him that in the early part of the year 1894; and Daugherty did pay him in that year over $27,000, nearly as much as the rent for two years, which the proof shows to have been $14,500 per year; and by this arrangement Daugherty gets for himself a profit for four years of $10,000 per year, according to his own testimony, and takes a mortgage to secure himself in the sum of $20,000 on all of Perryman's property, which he agrees to carry, while at the same time he not only pays Perryman the rents in advance, in the sum of many thousand dollars, but this with the knowledge that Perryman "was owing a great many parties, and they were crowding him." This contract between these parties was made February 15, 1894, and the judgment which this proceeding was instituted to collect was rendered December 4, 1893. Is it not apparent that this contract would operate in defeating, delaying or defrauding Perryman's creditors? Can there be a particle of question about it? We do not think so. Is there any doubt but what Mr. Daugherty, as shown by his own testimony, participated in this transaction? Was there not a purpose beyond the mere effort to

Fraud.
Fraudulent
conveyance.

collect his debt, in thus aiding Perryman? Mr. Daugherty, with full knowledge of Perryman's condition, assisted in putting Perryman's property beyond the reach of his creditors, and did so largely for his own benefit. The law calls this fraud in fact. Fraud has been defind to be "an act unwarranted in law, to the prejudice of third persons, and not that crafty villainy and grossness of deceit to which it is applied in common language." May, Fraud. Conv. p. 94. The intent is a legal intent, upon the facts admitted or proven. Bump, Fraud. Conv. §§ 21–27. The courts will declare a transaction fraudulent, as a matter of law, when the intent must necessarily be inferred from the act done or to be done, measured by its effect upon the rights of creditors. The law has never been controlled by the ignorance or the perverted ideas of parties to conveyances. When a a mortgage on its face shows that its legal effect is to delay creditors, the law imputes to it a fraudulent purpose. Robinson vs Elliott, 22 Wall. 513. So of any conveyance or contrivance. Sparks vs Mack, 31 Ark. 666. The debtor's right to prefer, and the creditor's right to secure, a just debt, are subject to limitations. Mr. Justice Davis, in Robinson vs Elliott, supra, says: "But the creditor must take care, in making his contract, that it does not contain provisions of no advantage to him, but which benefit the debtor, and were designed to do so, and are injurious to other creditors. The law will not sanction a proceeding of this kind. It will not allow the creditor to make use of his debt for any other purpose than his own indemnity. If he goes beyond this, and puts into the contract stipulations which have the effect to shield the property of his debtor, so that creditors are delayed in the collection of their debts, a court of equity will not lend its aid to enforce the contract. These principles are not disputed." It is a fraud upon creditors for a creditor to take more than is actually necessary to satisfy his debt. Klein vs Hoffheimer, 132 U. S. 367, 10

Sup. Ct 130.   When there is a fraudulent conversion of as-
sets. the garnishee is liable to their full value to the attach-
ing creditor. Id.   And the burden is upon the garnishee to
show fairness, when the debtor was insolvent and he knew
it. Id.   When notes are assigned and property conveyed the
same day, the whole will be treated as one transaction.   Id.
And several conveyances may be construed as one assign-
ment.   White vs Cotzhausen, 129 U S. 329, 9 Sup. Ct. 309;
Richmond vs Mississippi Mills, 52 Ark 30, 11 S. W. 960.
The consideration paid for the rent of the pasture was inad-
equate, as appears from Perryman's testimony; and, "when
the consideration is a pre-existing debt and further advan-
ces, the whole transaction must be free from fraud." . May,
Fraud. Conv. p. 112.   The relations of the parties were
close and of long standing.   "Trust and confidence are ever
the cloaks of covin and fraud."   "Gross insufficiency of con-
sideration, attempts to suppress and conceal the facts, and
secret defeasances back to the grantor, are strong presump-
tions of fraud, and cast the burden upon the garnishee to
show good faith." Rood, Garnish. (1897) § 80.   And, fail-
ing to do so, he should be charged.   Clements vs Moore, 6
Wall. 299; Callan vs Statham, 23 How. 477.   We are of the
opinion that the ruling of the court in sustaining the first
exception of the appellee to the master's report was proper.

The second proposition of appellants goes to the ques-
tion of the seizure by the receiver of property that was ex-
empt from execution, and that improvements upon the
public domain owned by Indians by blood could not be    Improve-
reached under the act of Congress of 1890.   This is true of   ments on
                                                              Indian lands.
the improvements, and only the personal property men-
tioned in the mortgage was liable to be taken by the receiver.
But there is no question but the lease could be seized under
the Arkansas statute.   "Every unexpired lease of land shall
be subject to execution and sale as real estate; but shall not
be subject to sale under any execution issued by a justice of

the peace; neither shall an improvement on public lands be sold under an execution issued by a justice of the peace." Mansf. Dig. § 3002 (Ind. T, Ann. St. 1899, § 2117). Such property is not included in the prohibition of the act of Congress of 1890. Under our statute of frauds, all kinds of property can be reached. "Every conveyance or assignment in writing or otherwise, of any estate or interest in lands, or in goods and chattels, or things in action, or of any rents issuing therefrom, and every charge upon lands, goods or things in action, or upon the rents and profits thereof, and every bond, suit, judgment, decree or execution made or contrived with the intent to hinder, delay or defrand creditors or other persons of their lawful actions, damages, forfeitures, debts or demands, as against creditors and purchasers prior and subsequent, shall be void." Mansf. Dig. § 3374 (Ind. T. Ann. St. 1899, § 2308). And while it is true that an execution creditor cannot complain if property is mortgaged that is not subject to execution, as the improvements included in this mortgage were, and such transfer would not be a fraud upon his rights, still, when part of the transaction is an attempt to place beyond his reach rents to the amount of thousands of dollars, in which mortgagor and mortgagee both participate, a court of equity will not sustain such a contract, and will declare the same fraudulent, as an attempt to hinder, delay, or defeat creditors.

The third proposition asserted by appellants is that the court should have sustained the finding of the master, which was as follows: "That I am of the opinion that the proof is not sufficient to show that there has been any actual fraud or conspiracy between Perryman and Daugherty in the matter of covering up of all of Perryman's property by the said mortgages, but I am of the opinion that Daugherty has placed himself in a position in which by law he has been saddled with the duty to pay his own debt due from Perryman out of the large sums which have passed through his

hands," etc.   The master and the court were of the opinion, undoubtedly, that, instead of there being two separate contracts, they were one and the same, and that the attempt to cover up and conceal these rents, that the mortgagor could get them, and the creditors be not able to reach them, was such a fraud that the whole transaction was void, and therefore this pretended mortgagee became "saddled" with the obligation to pay this judgment.   It is not shown that the contract was in writing as to the rent of the pasture.   The mortgage was recorded, but the pasture contract was kept concealed.

<em>Equitable garnishee.</em>

The fourth proposition asserted by appellants, that the court erred in overruling appellants' sixth exception, because the error of the master had not been pointed out to him so he could have corrected it before making his report, is undoubtedly well taken.   The statute makes no such requirement.   "All exceptions to the master's report shall be in writing, and shall be made within four days after the first day of the term of the court at which the report is made, if the term so long continue, and, if not, before the end of the term, and shall be disposed of without delay."   Mansf. Dig. § 5271 (Ind. T. Ann. St. 1899, § 3476).

<em>Exceptions to master's report.</em>

The fifth proposition asserted by appellants, that the sole question is whether the mortgage from Perryman was given to secure a bona fide indebtedness, has already substantially been considered.   The appellants ignore the facts testified to by the mortgagee, which conclusively, in our judgment, establish a fraudulent intent.   We agree that the power of this court is fairly stated in the following quotation by appellants:   "This is an equity case, and comes to the court of appeals for a trial de novo.   ·For this court can itself sift the whole evidence, and determine what the finding of the chancellor should have been, upon such evidence as was competent and proper.   The chancellor below, and

<em>Appeal. Trial de novo.</em>

this court on appeal, are judges of law and fact.'" Nolen vs Harden, 43 Ark. 318.

The sixth proposition asserted by appellants is that "the fact that Daugherty had paid all that was due Perryman at the time this suit was brought defeats absolutely this action." We would suggest that the master finds from the testimony that the rents for 1898 are unpaid. Has Perryman no interest in these rents? Deducting the royalty to be paid to the Creek Nation, they will amount to $11,000. But appellants say they are to go to Daugherty, to be applied on his mortgage. When was that arrangement made? Daugherty says he is to have them, but he also says that all the rents under the contract of lease were to be paid to Perryman absolutely, and in consequence he required a mortgage to secure the payment of his debt. The proof is silent as to any change in the payment of these rents. Under the statute, "a lien shall be created upon the property of the defendant by the levy of the attachment, or service of the summons with the object of the action indorsed thereon, on the person holding or controlling his property." Mansf.

**Judgment. Rental applied thereon.** Dig. § 3087 (Ind. T. Ann. St 1899, § 2202). Was the contract changed after the service of the summons, and after a lien in favor of appellee had been fixed? We are of the opinion the receiver should be continued, and should collect the rents for 1898 from defendant Daugherty, and out of the proceeds pay first the amount of the judgment that appellee has against L. C. and G. B. Perryman, with the costs, and also the costs of this proceeding, and the balance, if any, to be paid to defendant G. B. Perryman. With this modification, let the jugment of the court below be affirmed.

CLAYTON and THOMAS, JJ., concur.